# W. C. ROBIE, ADM'R OF J. W. HORSKINS' ESTATE, v. THE ESTATE OF E. D. BRIGGS.

# CHAUNCEY TEMPLE, ADM'R OF E. D. BRIGGS' ESTATE, v. THE ESTATE OF J. W. HORSKINS.

### Statute of Limitations. Payment. Individual and Partnership Debt.

1.  When one owes another an individual and a partnership account, and makes general payments, without any application, without protestation against further liability, and the payments amount to more than the individual account, the law upon principles of equity will apply the balance on the partnership account, which will remove the bar of the Statute of Limitations, although the creditor, without definite knowledge of the standing of the two accounts, gave the debtor credit for all the payments on his individual account.

2.  When a debtor, owing two or more known demands, makes a voluntary payment on his indebtedness generally, without direction as to its application, nor under circumstances clearly showing to which debt he intended the money to be appropriated, if more than sufficient to pay one debt, on the creditor's failure to make the appropriation, the law regards the debtor as intending such application as it upon the principles of equity will make. And such application will have effect to remove the statute bar.

APPEAL from the Probate Court. Heard on an auditor's report, April Term, 1886, ROYCE, Ch. J., presiding. Judgment on the report for the defendant in the case of *Robie, adm'r*, v. *Briggs' estate*, and judgment for the plaintiff in the case of *Temple, adm'r*, v. *Horskins' estate*. The case appears in the opinion.

*Stephen E. Royce*, for Briggs' estate.

The individual account of Horskins is continuous and independent; and so is the partnership account. If Briggs failed to make an application, Horskins could apply it on either account, subject to the limitations upon this right of a creditor which have been established by law. *Briggs* v. *Williams*, 2 Vt. 283; *Rosseau* v. *Cull*, 14 Vt. 83; *Ayer* v. *Hawkins*, 19

Robie *v.* Briggs.

Vt. 26; *Wheeler* v. *House*, 27 Vt. 735; *Pierce* v. *Knight*, 31 Vt. 701; *Langdon* v. *Bowen*, 46 Vt. 512; *Early* v. *Flannery,* 47 Vt. 253; *Roakes* v. *Bailey*, 55 Vt. 542. When a creditor has once exercised his right and made application of a payment, he cannot change his mind and afterwards make a different application, more disadvantageous, either to third persons or to the debtor. *Bank of Muskingum* v. *Carpenter*, 7 Ohio (Pt. 1) 21; *Tooke* v. *Bonds*, 29 Tex. 419; *Applegate* v. *Coons*, 74 Ind. 247; *McMaster* v. *Merrick*, 41 Mich. 505; *Hill* v. *Southerland*, 1 Wash. (Va.) 128; *Tomlinson* v. *Kinsella*, 31 Conn. 268; *Rundlett* v. *Small*, 25 Me. 29; *Codman* v. *Armstrong*, 28 *ib.* 91; *Dorsey* v. *Wayman*, 6 Gill. 59. And the right of appropriation is a personal one, strictly confined to the original parties. *Gordon* v. *Hobart*, 2 Story, 243.

If the law is to make the application, no such presumption can arise as is necessary for the very foundation of the rule under which a partial payment is .held in law to remove the statute bar. *Burr* v. *Burr*, 26 Pa. St. 284; *Beltzhoover* v. *Yewell*, 11 Gill. & J. 212; *Carroll* v. *Forsyth*, 69 Ill. 127. And under such circumstances as to warrant the inference that the debtor recognized the debt and signified his willingness to pay it. *Pickett* v. *King*, 34 Barb. 193; *Jewitt* v. *Petit*, 4 Mich. 508; *Gerhard* v. *Gerhard*, 4 Atl. Rep. 55, and note. So it has been held that a payment by the debtor's assignee in insolvency can have no effect to remove the statute bar from the residue of the debt. *Roscoe* v. *Hale*, 7 Gray, 274; *Stoddard* v. *Doane*, *id.* 387; *Richardson* v. *Thomas*, 13 *id.* 381; *Roosevelt* v. *Mark*, 6 Johns. Ch. 266. Nor payment by an executor or administrator. *Gilpin* v. *Plummer*, 2 Cranch (C. Ct.) 54; *Hanson* v. *Towle*, 19 Kan. 273. Nor *enforced* part payment. *Thomas* v. *Brewer* (Iowa), 7 N. W. Rep. 571; *Kelley* v. *Weber*, 27 Hun, 8; *Wisner* v. *Stein*, 97 Pa. St. 322. It has been held that "when a debtor, owing several debts, makes partial payment with no direction as to its application, its application to a particular debt does not interrupt the running of the statute thereon." *Royston* v. *May*, 71 Ala.

398; 11 Gill. & J. 212; *Burr* v. *Burr, supra;* 35 N. J. L. 79; 1 Gray, 630.

Although when a debtor neglects to make application of a payment made by him, the creditor may do so, yet he must make the application directly, and cannot be allowed to change it as his interest or convenience may change.   *Hill* v. *Southerland,* 1 Wash. (Va.) 128.

*Ballard & Burleson* and *Cross & Start,* for Horskins' estate.

On the death of Gates, the balance due to Horskins & Gates from Briggs, of $593.05, became due and owing to Horskins. Briggs was only accountable to Horskins, and could extinguish his liability on said account in no way save by payment to Horskins.   *Meader* v. *Leslie,* 2 Vt. 569; *Meader* v. *Scott,* 4 Vt. 26.   Horskins could maintain book account to recover the partnership account.   He could also have joined in such action, causes of action accruing to him on book in his private capacity. *Wood* v. *Insurance Co.* 31 Vt. 552;  13 Vt. 17.   After the death of Horskins his administrator was the only person that could maintain an action on this account.   *Peters* v. *Davis,* 7 Mass. 257;  *Joslyn* v. *Taylor,* 24 N. H. 268;  *Clark* v. *House,* 23 Me. 560.   These accounts are identical; they are due and owing to one and the same person.   They are all accounts, and they constitute one cause of action, and if the payments made by Briggs had not been sufficient to extinguish the private account of Horskins, the partnership account would have been saved from the operation of the statute by these payments.   *Sanderson* v. *Melton Stage Co.* 18 Vt. 107; *Ayer* v. *Hawkins,* 19 Vt. 26;  *Goodwin* v. *Buzzell,* 35 Vt. 11.   Part payment of a debt barred by statute, if made without protestation against further liability, is a recognition and acknowledgment of such debt at the time of making the payment, from which a promise to pay the residue will be implied.   *Corliss & Way* v. *Grow,* 58 Vt. 702;  *Ayer* v. *Hawkins,* 19 Vt. 26. The fact that these payments were minuted upon the book used by Horskins in his private business is immaterial.   Such entry

Robie *v*. Briggs.

was an application upon the indebtedness of Briggs to Horskins, in whatever form said indebtednees might be. The law will apply it upon this account. In the case of *Corliss & Way* v. *Grow*, *supra*, the application was not made until about the time the suit was commenced. In this case the auditor has found that these payments were made by Briggs upon his general indebtedness. Where no application is made by the parties, the court will make such application as is just and equitable between the parties. *Pierce, Clark & Co.* v. *Knight*, 31 Vt. 707. The rule is well settled that general payments and credits will be applied to extinguish indebtedness in the order of time in which they accrued. *St. Albans* v. *Faily*, 46 Vt. 448. If Horskins had brought an action on the partnership account in his lifetime, Briggs could have offset any claim he had against Horskins. *Wood* v. *Insurance Co.*, *supra*. If Briggs could have offset any such claim, then Horskins, in such suit, could credit the payments of October 7th, 1882, January 24th and March 14th, 1884, and thereby avoid the Statute of Limitations. *Davis* v. *Smith*, 48 Vt. 57.

The opinion of the court was delivered by

WALKER, J. The foregoing cases stand upon the same facts as reported by the auditor, and the result reached in either case necessarily determines the other.

On the seventh day of October, 1882, J. W. Horskins held, as surviving partner of the firm of Horskins & Gates, a partnership account against E. D. Briggs, which accrued prior to the dissolution of that firm, January 1, 1866. This account had never been balanced, but on said seventh day of October it showed a balance against Briggs of $593.05. No payment had been made thereon by Briggs since 1873, nor had it been otherwise acknowledged; and it was consequently then barred by the Statute of Limitations.

On the same seventh day of October, Horskins also held an individual account against Briggs, independent of the partnership account, which contained their matters of deal from

January, 1866, to 1882, and a balance of an old account, that accrued prior to the partnership account, brought forward as the first item thereof, which on that day showed a balance against Briggs of $54.78. This individual account, which contained a large amount of deal between the parties, had at all times during its existence shown a balance against Briggs, varying from $50 to $500, but had never been examined and balanced.

With these two accounts standing as thus stated, and without any examination of them, or any definite knowledge of their standing upon the books or of the balances against him upon either, but supposing that he was owing Horskins a considerable amount, Briggs made three cash payments to Horskins upon his indebtedness generally, without any directions as to their application, of the dates and amounts following, to wit: October 7, 1882, $100; January 24, 1884, $46.86; March 14, 1884, $53.14, aggregating $200. All these payments were credited by Horskins without any examination or balancing of the books or definite knowledge of the standing of the two accounts, in his individual account with Briggs. Soon after the last payment, and in April, 1884, Horskins died. Gates died in 1878, and Briggs, after the commencement of his action against Horskins' estate.

On balancing up the individual account after Horskins' death, it was ascertained that the $100 payment made October 7, 1882, overpaid it $45.22, and that when the last two payments were made there was nothing due from Briggs on the individual account; and that the three payments which Horskins had credited upon it overpaid the same $145.22. Briggs thereupon presented a claim for this excess to the commissioners upon Horskins' estate, which passed to the County Court by appeal; and for this excess the administrator of Briggs seeks to recover in his action against Horskins' estate. On the other hand, the administrator of Horskins, in his action against Briggs' estate, seeks to recover the unpaid balance of $593.05, standing against Briggs in the partnership account,

less the $145.22, which he claims Briggs' estate cannot recover, because, as he contends, the three payments, of which the $145.22 is a part, were made to apply on Briggs' indebtedness generally, and after the application of a sufficient amount thereof to extinguish the individual debt, the law applies the excess, as of the date of the several payments, upon the partnership debt, and thus removes the statute bar.

The question, then, for consideration is, whether the $45.22 paid in excess of the individual debt October 7, 1882, and the two payments made in 1884 after the individual account was extinguished, all being general payments without directions by the debtor as to their application, and credited by the creditor in the individual account without ascertaining how the two accounts stood, warrant the implication of a new promise to pay the partnership debt.

It has long been well settled that a part payment of a debt barred by the statute, if made without protestation against further liability, is a conclusive recognition and acknowledgment on the part of the debtor of such debt at the time of making it, from which the law implies an admission of the actual existence of the balance as a subsisting debt, notwithstanding the statute, and a promise to pay it, which prevents the operation of the statute.

It is also well settled that the debtor in making the payment, where there are several demands against him, may direct its application. He has the primary right to appropriate the payment to whatever debt he chooses, and his direction, when given in express terms or when implied from the circumstances of the payment, must govern its application. But if no application is directed by the debtor, or implied from the circumstances of the payment, the creditor may make it. If neither the debtor or creditor make the application, the law will make such application of the money as may be just. The debtor's intention as to the appropriation may be said to govern. This intention, when no designation of ·demand is made by the debtor at the time of payment, is gathered from the circum-

stances of the transaction. If a general payment is made without direction to a creditor holding only one demand, the intention of the debtor is manifest.

When a voluntary payment is made by a debtor on his indebtedness generally to his creditor, holding two or more known demands against him, without direction as to its application, and not under circumstances clearly showing to which debt he intended the money to be appropriated, the law regards him as having waived his right in favor of the creditor, and as intending that the payment should be applied as part payment of such debt or debts, if more than sufficient to pay one, as the creditor may justly and reasonably elect to appropriate it to; and on the creditor's failure to make the appropriation, as intending such an application as the law upon the principles of equity will make. So that the application of a general payment, whether directed by the debtor, creditor or the law, may be said, in a legal sense, to be made in accordance with the debtor's intention; and such an application of a payment in either way will have effect to remove the statute bar from the debt or debts, if the payment is more than sufficient for one demand, upon which the payment is thus applied. This principle applies only to voluntary payments and payments authorized by the debtor. *Ayer* v. *Hawkins*, 19 Vt. 26; *Corliss & Way* v. *Grow*, 58 Vt. 702; *Walker* v. *Butler*, 6 El. & Bl. 506.

Briggs knew of the existence of both debts. He made payments to Horskins upon both after the dissolution of the copartnership. He supposed he was owing Horskins a considerable amount, and on the day of Hoskins' death spoke of paying $100 more to him. With all this knowledge he made the payments in question upon his indebtedness generally, and waived the right of appropriation. There is no fact found which shows that Briggs intended to pay only the individual debt and not the partnership debt.

On the contrary, the auditor finds that there was nothing to show that he intended that the payments, or either of them,

should be applied wholly upon either of the accounts to the exclusion of the other. He clearly did not intend them as loans or gifts. They were made and intended as part payments of a greater subsisting indebtedness, and must be so appropriated. The debtor's intention is controlling. There were only two debts to which the payments could be appropriated. Horskins applied them first to the extinguishment of the individual debt which was not barred by the statute. Of this Briggs could not complain, for it was most favorable to him. Horskins could legally appropriate to the individual debt only so much of the payments as was necessary for its extinguishment. When that debt was extinguished, the balance must be appropriated to the payment of the partnership debt, which was barred by the statute, as of the dates of the payments making up this balance. When so applied, whether by the creditor or the law, they have effect to take the debt out of the operation of the statute, because they were payments upon a general indebtedness, of which the partnership debt was a part, and after the extinguishment of the individual debt, the only remaining demand upon which they could be applied.

Payments must be applied according to the intention of the parties or the intention of the party paying, when that can be ascertained. It conclusively appears from the auditor's report that Briggs made the payments for the purpose of reducing his general indebtedness to Horskins, and that Horskins received the money with that understanding. And this purpose was not defeated by Horskins, crediting in his individual account, without ascertaining the balance due thereon, the $45.22, the excess of the October payment over the amount due on the individual account, and the two payments made after it was in fact extinguished. This erroneous entry did not appropriate the whole amount of the payments to the payment of the individual account. It appropriated only so much of the money as was necessary for the payment of the balance due thereon, and left the residue to be applied by the laws, which applies it as of the date of the payments upon the part-

nership debt, which was the only remaining demand in the hands of the creditor. This is not a change of appropriation made by the creditor, but an application of money paid on general indebtedness, and not appropriated by him.

With this application, the payments making up the $145.22 were by implication payments upon the partnership debt as a larger subsisting debt, and an acknowledgment of the actual existence of the balance, from which the law implies a new promise, which prevents the operation of the statute.

The right of Horskins' administrator to recover the balance found due on the partnership account is clear, if the payments removed the statute bar. As we hold that the payments removed the statute bar, the consequence is that the judgment of the County Court is reversed in both cases; and in the case of *W. C. Robie, administrator of the estate of J. W. Horskins,* v. *The estate of E. D. Briggs,* judgment is rendered upon the auditor's report for the plaintiff to recover of the defendant $447.83, and interest thereon since March 14, 1884, damages and costs. In the case of *Chauncey Temple, administrator of E. D. Briggs' estate* v. *The estate of J. W. Horskins,* judgment is rendered upon the auditor's report for the defendant to recover costs. Both judgments are ordered to be certified to the Probate Court.