## * CHARLOTTE SANBORN v. JOHN T. COLE.

*Signature by mark. Proof of execution. Evidence. Husband and Wife. Statute of limitations. Endorsement.*

1. Where the signature to a promissory note is by the mark of the maker, which is attested to by a subscribing witness, evidence that the name of the witness is in his hand-writing, and that such witness has deceased, is competent to prove the execution of the note.

2. Where the husband is incompetent as a witness by reason of the death of the other party to the contract, the fact of the wife's agency in and about that contract cannot be shown either by her testimony or that of her husband.

3. Testimony of a son that the wife did all the husband's business during the period covered by the transactions in suit, would tend to show that she acted as his agent in those transactions; but, it not clearly appearing from the exceptions that the son's evidence related to that period, the court, in this case, declined to infer that it did.

4. Where several notes are written one below the other upon the same sheet of paper, which is folded, and an endorsement is written upon that part of the sheet where it naturally would be as folded, which purports to be upon the " within notes," such endorsement will be construed as having been made upon all the notes, where the payment was made under such circumstances as would justify that application. And the same would be true of all the notes covered by the endorsement if the paper were unfolded and the endorsement written across several of the notes.

5. If the debtor treats several notes as constituting one demand, and makes a payment in that view, the creditor may apply it upon all the notes.

6. Where the debtor originally gave several notes for one indebtedness, it is not incumbent upon the creditor to show that the debtor had in mind the existence of all the notes at the time of making the general payment; for even if he had forgotten that some of them were outstanding, without the fault or knowledge of the creditor, the pay-

* Heard at the May term, 1890.

ment would be upon the whole indebtedness and would remove the statute bar as to all the notes.

7. A part payment will renew a note already barred by the statute of limitations, although the endorsement upon the note is not made by the debtor, nor by his direction.

8. In the absence of fraud upon the part of the creditor, the fact that the debtor is blind does not entitle him to any special protection.

9. A judgment will not be reversed for error in the charge when it necessarily appears from the verdict that the excepting party was not harmed.

Assumpsit. Plea, the general issue with notice of special matter. Trial by jury at the June term, 1889, Royce, Ch. J., presiding. Verdict and judgment for the plaintiff.

The defendant excepts.

The plaintiff sought to recover upon five promissory notes, four for $100 each, and one for $50. All the notes bore date, August 31, 1871, and were made payable to one Sanborn, the former husband of the plaintiff, who died in 1877 or 1878.

The defendant claimed that he had never executed but three of these notes, being three of the $100 notes. He was totally blind at the time the notes were given, and had so continued. He claimed that by reason of his infirmity he was obliged to delegate all his business to his wife, and that she had acted as his agent in reference to the giving of these notes. To establish the fact of his wife's agency he offered his own testimony and that of his wife, which was excluded. He also offered the testimony of his son upon the same point, with regard to which the exceptions stated :

"The defendant then offered his son as a witness to prove that his mother, through the direction of his father, always did the business of the family, until he was old enough to do it himself. Evidence excluded, to which the defendant excepted."

The defendant himself was received as a witness upon all matters transpiring after the appointment of an administrator upon the estate of Sanborn.

Sanborn *v.* Cole.

The notes were all upon the same piece of paper, the $50 note being first, and were payable in one, two, three, four and five years from date with interest annually. The defendant claimed that certain of the notes were barred by the statute of limitations. The plaintiff relied upon a payment within six years. The facts in reference to this sufficiently appear in the opinion. The question as to whether these were witnessed notes, or whether, if witnessed, that fact would be material, does not appear to have been considered below.

*J. P. Lampson*, for the defendant.

The wife might testify that she was her husband's agent. *Martin v. Hurlburt*, 60 Vt. 364.

*Bates & May*, for the plaintiff.

The signature to the notes was properly proven. *Kimball v. Davis*, 19 Wend. 437; Daniel Neg. Inst. s. 112; *Lyons v. Holmes*, 11 S. C. 429; 32 Am. Rep. 483.

That the defendant's wife had acted as his agent in other matters does not prove that she did in this; hence the evidence of the son was properly excluded. *Esterbrooks v. Prentiss*, 34 Vt. 457; *Orcutt v. Cook*, 37 Vt. 515.

The wife could not testify that she was a competent witness. *Presby v. Blodgett*, Gen. T. 1887; *Miles v. U. S.*, 103 U. S. 304; *Jackson v. Gridley*, 18 John. 98; *Com. v. Wyman*, Thach. Cr. Cases 432; *State v. Townshend*, 2 Harr. (Del.) 543; *Smith v. Coffrin*, 18 Me. 157; *Ely v. Jones*, 1 N. J. Law 46; *Mott v. Hicks*, 1 Cowen 535; *Barr v. Armstrong*, 56 Mo. 577; 9 Am. and Eng. Ency. Law, p. 840.

The opinion of the court was delivered by

MUNSON, J. The defendant is sued as the maker of five promissory notes. The signature to the notes consists of the defendant's name, with a cross designated as his mark. The name

Sanborn *v.* Cole.

of H. Perkins appears upon each note as the signature of a witness. The defendant denied the execution of the notes, and put the plaintiff upon her proof. To establish the controverted fact, the plaintiff was permitted to show that the name "H. Perkins" was in the handwriting of one Hiram Perkins, and that said Perkins had deceased; and upon this showing, without other proof of execution, the notes were received in evidence.

The English rule requires that the execution of an attested writing shall be established by the testimony of the attesting witness, or, in case of his death, disability, or absence from the jurisdiction, by proof of his handwriting. *Barnes* v. *Trompowsky,* 7 T. R. 265; *Call* v. *Dunning,* 4 East 53; *The King* v. *Harringworth,* 4 M. & S. 350; *Whyman* v. *Garth,* 8 Exch. 803. In this country the English rule has been closely adhered to in some States, while in others it has been variously modified and restricted. *Brigham* v. *Palmer,* 3 Allen 450; *Hall* v. *Phelps,* 2 Johns. 451. It has been held in this State that when an attestation is not necessary to the operative effect of the instrument, proof of the handwriting of a witness who cannot be produced may be dispensed with, and the paper be received in evidence upon proof of the hand of the contracting party. *Sherman* v. *Transportation Co.,* 31 Vt. 162. But the case contains no intimation that proof of the handwriting of a deceased or absent witness is not sufficient evidence of the execution of an attested writing. We think the rule that a writing shall be admitted in evidence upon such proof remains undisturbed in this State.

This being the evidence upon which papers signed in the ordinary way are admitted, we see no reason why other or further proof should be required when the signature is by mark. It is considered that the attesting witness is selected by the party as the person through whose testimony, or by proof of whose hand in the event of his decease, the authenticity of his own signature may be shown. Especial value attaches to proof of the hand of

38

a witness when the signature of the contracting party is by mark, from the fact that in such cases evidence as to the signature is more difficult to procure and of less certainty when obtained. If it were the general rule that proof of the signature of the maker should be required in addition to proof of the handwriting of the witness, it might well be urged that the rule should be relaxed when the signature is a cross. There is so little room in the use of this simple character for the development of settled individual peculiarities, that proof of such a signature by identification or comparison must ordinarily be very unsatisfactory. It has, indeed, been questioned whether such evidence is of sufficient value to be entitled to admission. We find no support for the claim that the holder of a paper thus signed must furnish more evidence of its execution than is required in the case of an ordinary signature. 1 Best Ev. 327; 1 Dan. Neg. Inst. s. 112; *Lyons v. Holmes,* 11 S. C. 429.

Sanborn, the payee of the notes, died long before the suit was brought, and the plaintiff became the owner of the notes upon the settlement of his estate. The defendant claimed that his wife as his agent did whatever business had been done with Sanborn in connection with the notes. His offers to prove this agency by his own testimony and that of his wife were properly excluded. The defendant could not testify in his own favor because the other party to the contract in issue was dead. R. L. 1002. *Insurance Co.* v. *Wells,* 53 Vt. 14. His wife could not be a witness in the suit unless she was the agent of her husband in the transaction of the business. R. L. 1005; *Carpenter* v. *Moore,* 43 Vt. 392. It was therefore necessary to establish her agency before she could become a witness. She was not a competent witness to show herself within the exception to the general disqualification. Persons *prima facie* competent, whose competency is questioned, may be examined on the *voir dire* in support of their competency, but persons *prima facie* incompetent, cannot testify until their competency has been otherwise established.

In *Fay* v. *Green*, 1 Aik. 71, the depositions of certain persons disqualified by interest, unless their interest had been discharged, were received in evidence on the strength of their own testimony therein that such interest had been discharged. The court considered that the testimony by which the interest was removed was the testimony of interested witnesses, and should not have been received. The rule has been recognized in many cases. *Botham* v. *Swingler*, 1 Esp: 164; *Scate* v. *Townsend*, 2 Harr. (Del.) 543; *Mott* v. *Hicks*, 1 Cow. 513, 535; *Stevenson* v. *Mudgett*, 10 N. H. 338; *Bank* v. *Mersereau*, 3 Barb. Ch. 528.

Testimony that for a period covering the time of this transaction the defendant's wife did all his business, would be evidence tending to show that she was his agent in this transaction. If the testimony which could have been given by the son under the defendant's offer would have covered such a period, it was error to exclude it. But if his testimony could have related only to a later period, its exclusion was not error. The exceptions are not clear upon this point, but from what appears in them it seems probable that the age of the son was such that the proposed testimony could have referred only to a later period.

The five notes are all of the same date, and are written one below another upon the same sheet. The note maturing last fell due in 1876. The endorsements made previous to October, 1879, are so entered upon the back of the sheet as to be placed on separate notes, and are without words indicating an intention to extend the application to other notes. The endorsements dated October 8, and December 27, 1879, are so entered as to be upon one note, but are written where entries would naturally be made upon the paper as folded, and read, "Received on the within notes." The last two endorsements are so extended across the sheet as to be upon all the notes but one, and read, "Received on the within notes." Upon the note not reached by the writing so extended a separate endorsement was made.

The defendant claims that the endorsements of October 8,

and December 27, must be treated as applied on the note upon the back of which they are written, and that the endorsements extended across the back of four of the notes must be treated as applied upon the note on which the entries commence. It is insisted that when a payment is so made as to justify an application by the creditor upon more than one note, such an application can be accomplished only by endorsing the amount paid in separate sums upon the several notes. We are not disposed to so hold. The application here is made in terms upon the " within notes," and we do not think the language of the endorsement is made ineffectual by its position. When notes are held in the form shown here, and an endorsement is made in the words and in either of the methods above stated, we think it must be treated as a valid application upon all the notes covered, provided the payment was so made as to justify such an application.

It is held in this State that when a debtor makes a general payment to a creditor who holds several notes against him, the creditor may apply the payment upon any one of the notes, but cannot divide it among them all. *Ayer* v. *Hawkins,* 19 Vt. 26; *Wheeler* v. *House,* 27 Vt. 735. This is upon the ground that although no application is directed, regard must nevertheless be had to the intention of the debtor, and that he cannot be presumed to have intended an application upon more than one of the notes. It is evident, however, that these cases would not be controlling where the debtor had regarded and treated the several notes as constituting one demand, and made the payment in that view. The treatment of the indebtedness in this case seems to have been such as to afford no ground for claiming the general payments to be within the doctrine of the cases above cited. The jury was instructed that if the payments were general payments, made to apply on these notes, without specifying any application upon particular notes, the creditor had a right to apply them as he has, upon the notes generally, and that such application would renew the debt; and although a general exception

was taken to so much of the charge as related to the application of payments made generally, this exception was waived in argument. The case states that the evidence of the defendant tended to show that he supposed he was making payments upon three one-hundred dollar notes, and no more; and the question raised as to the effect of these payments was, whether they were a recognition of three notes or of all the notes. It is not claimed but that the payments were so made that the creditor was justified in applying each payment upon all the notes which the debtor then understood were held against him. The points specially urged upon the court below, and relied upon here, relate to the matter of intent, as affected by the defendant's claimed ignorance of the situation, and by the fact of his physical infirmity.

The defendant was blind at the date of the notes, and has since remained so. On trial, he admitted giving three notes, but denied that more were given. He also admitted making the payments represented by the endorsements, and that he gave no express direction as to their application. But he claimed that inasmuch as he had knowledge of only three notes, the payments were necessarily made upon those notes, and that there could be no valid application upon any other. In this view, the court was asked to instruct the jury that to entitle the plaintiff to the benefit of the endorsements on the other two notes as against the statute, it was incumbent on her to prove that the payments were made with knowledge on the part of the defendant that the creditor held such notes against him. The court declined so to charge, and we think properly.

The question whether the defendant executed all the notes was submitted to the jury, and the verdict has established the fact that he did. He knew at the time of the transaction how many signatures he affixed as well as if able to see. If he afterwards understood it differently, it was because of forgetfulness. His claim is not based upon any supposed cancellation of

a part of the notes, or supposed transfer of a part to other parties. He made each payment as a general payment upon the Sanborn indebtedness, whatever it was. The general intention with which the payment was made will not be controlled by a consideration of what his action might have been if he had then had in mind that there were five notes instead of three. The payment having been so made as to justify an application upon the notes generally, and that disposition having been made of it, the application cannot now be overthrown on the plea that the debtor was under a misapprehension as to the number of the notes, when his misapprehension was not caused by any act or omission of the creditor.

The defendant cites in support of the contrary view, *Roakes* v. *Bailey*, 55 Vt. 542, where it is said that " if the debtor pays with one intent and the creditor receives with another, the intent of the debtor shall govern." But the proper application of the doctrine is apparent from the facts of that case and the further views expressed. There, a firm with which the debtor had been dealing was dissolved, and was succeeded by one of its members. The debtor received no notice of the dissolution of the firm, and its successor continued to deliver goods and credit payments upon the same pass-book, as if there had been no change. The debtor supposed he was making payments upon the account of the firm, and the successor of the firm treated them as paid upon the subsequent account. The court considered that the debtor was deprived of an opportunity to expressly direct an application by the fault of the creditor, that the circumstances under which the payments were made showed conclusively what the debtor's intention was, and that no right ever existed in the creditor to make the attempted application. It is evident that the facts of the case at bar do not bring it within this decision.

Effect being given to the above applications as made by the creditor, none of the notes have ever been barred, except the first one, of which a small part remained unpaid by previous en-

Sanborn *v.* Cole.

dorsements. It is insisted that a recovery cannot be had upon a note which has been barred, unless the payment relied upon to remove the bar was endorsed by the debtor or by his direction; and *Pond* v. *Williams*, 1 Gray 630, and *Ramsay* v. *Warner*, 97 Mass. 13, are cited in this connection. It is held in Massachusetts that a general payment may be applied by the creditor upon a claim that is barred, but that such application will not revive the unpaid balance of the debt. It is said that no promise to pay the balance of a debt can be implied from a payment which is not intentionally made upon that particular debt. We think, however, that any application which the creditor is justified in making must be followed by the ordinary consequences of a part payment. When the debtor leaves the application to be made by the creditor, or in default of action on the part of the creditor, by the law, he must be held to have intended such application as may finally be made by the creditor or by the law. *Robie* v. *Briggs*, 59 Vt. 443.

If we correctly understand the exceptions, the point was raised that the creditor would have no right to endorse anything upon a barred note, unless the defendant knew at the time of the payment, or was informed before the application, that such note was barred. This claim seems to have been made upon the ground that the defendant's blindness entitled him to some special protection. But the creditor's right to make the application does not depend upon the correctness or completeness of the debtor's understanding as to the situation of the demand; and, in the absence of any question of fraud or concealment on the part of the holders of the paper, we do not see how the debtor's deprivation of one of the ordinary means of acquiring information can affect the action which he was willing to take upon such information as he had.

The defendant claimed that if there was a fifty-dollar note it was given for usury. The jury was instructed that if it was given for usury no recovery could be had upon it. This was

correct. The jury was further instructed that if the note was given for usury, and the amounts endorsed upon it were paid with an intention that they be so applied, the defendant could not recover them in this suit by receiving credit for them in ascertaining the general balance. If this was erroneous, no harm came from it, for the jury returned a verdict for all the notes, which they could not have done under the instructions given without finding that the note was not usurious. Having found the note was not given for usury, they did not reach the matter in which the instruction complained of was given.

*Judgment affirmed.*