MILEY HAWKINS V. E. C. WINDHORST.

No. 15,471.   (96 Pac. 48.)

SYLLABUS BY THE COURT.

EVIDENCE—*Agency—Husband and Wife.* Where the issue is whether a husband was the agent of his wife with authority to sign her name to a check upon her bank account, evidence that he frequently signed checks on her account with her knowledge and consent is competent.

Error from Edwards district court; CHARLES E. LOBDELL, judge. Opinion filed April 11, 1908. Reversed.

*A. C. Dyer,* and *F. Dumont Smith,* for plaintiff in error.

*G. Polk Cline,* for defendant in error.

The opinion of the court was delivered by

PORTER, J.: The plaintiff sued the defendant to recover the proceeds of a protested bank check for the sum of $500, drawn upon her account by her husband, Fred Windhorst. The petition alleged that defendant's husband was her agent, duly authorized to sign her name to checks on the bank, and generally to conduct the business of defendant with the bank as fully as she

herself might do.   It also alleged that the defendant, by her agent, for a valuable consideration, delivered the check in question for the use of the plaintiff, and that afterward the same was presented and payment refused.

The controlling question raised is upon a ruling of the court in the introduction of evidence.   Plaintiff proved by the cashier of the bank that the canceled checks drawn on defendant's account had been returned to her.   Defendant herself was then called to the stand, and she was asked the following question:

"Ques.  What I want to know is, where are the checks, if any, that your husband signed your name to against your account?   Have you got them?   [Objected to unless pertaining to this particular check.]

"By the Court:   'I will sustain the objection.   This is preliminary, but just as well sustain it here as later on. That question becomes immaterial except to such checks as relate to this transaction.' "

The husband, Fred Windhorst, was then called as a witness by the plaintiff, and he was asked if he ever signed his wife's name to bank checks.   The court sustained an objection interposed on the same ground as before.   The cashier of the bank, having been recalled, testified that he personally paid checks drawn on the account of defendant; but when asked to state whether or not the husband of defendant signed her name to checks drawn against her account, and whether he did so frequently or otherwise, a similar objection was sustained.   Proper exceptions were saved to the rulings of the court.

We think the court erred in refusing to permit plaintiff to prove that the husband had signed his wife's name to checks drawn upon her account, with her knowledge and consent.   The issue was whether the husband was the general agent of his wife for that purpose.   Agency may always be proved by circumstantial evidence.   And the rule is well established that in transactions which relate to trade and commerce it may be

proved or inferred from evidence of the habits and course of dealing between the parties. It is said in volume 3 of Elliott on Evidence, section 1635:

"Proof that the principal permitted the supposed agent to perform similar acts and transactions with other persons is competent as tending to establish the existence of an agency."

Mr. Wigmore in his work on Evidence (vol. 1, § 377) says that the use of such evidence for proving the authorization of an agent has always been sanctioned; and that where the question is as to the authority of an agent, and the transaction "has taken the form of a usual and fixed course of business between two persons, this habit is admissible to indicate the probable tenor of a particular transaction." (Vol. 1, § 94.)

Upon an issue as to the implied authority of an agent to exercise powers in excess of those expressly given him it was said, in *Wheeler v. McGuire, Scoggins & Co.,* 86 Ala. 398, 5 South. 190, 2 L. R. A. 808, that "all the circumstances of the transaction, the previous conduct of the defendant, and the usages of the business, may be properly considered" (p. 404), and it was held that any evidence is relevant which shows prior similar acts of the supposed agent and which tends to prove or disprove the knowledge of the alleged principal. In *Sanborn v. Cole,* 63 Vt. 590, 22 Atl. 716, 14 L. R. A. 208, it was held that testimony that a wife did all of her husband's business is admissible upon the question of her agency in a particular transaction within that time. The general rule is stated in volume 1 of the American and English Encyclopædia of Law, at pages 959 and 961, as follows:

"In a great proportion of cases agency arises, not from the use of express language nor from the existence of a well-defined relation, but from the general conduct of the parties. Where one person holds another out as his agent with certain authority he is liable for his acts on the ground of estoppel, whether he actually intends to be bound or not. . . . While agency may be im-

plied from a single transaction it is more readily inferable from a course of dealing."

So, in *Weaver v. Ogletree et al.*, 39 Ga. 586, it was held that an agent who had been in the habit of indorsing notes with his principal's name, with the knowledge and consent of the principal, will be presumed to have that authority. And the rule is well settled that agency may be inferred from a series of transactions. In *Watkins v. Vince*, 2 Stark. (Eng.) 324, it was held:

"Evidence that the son of the defendant, a minor, has in three or four instances signed bills of exchange for his father, is sufficient, in an action against the father on a guarantee, to warrant the reading of an instrument, purporting to be a guarantee by the father in the handwriting of the son." (Syllabus.)

(To the same effect see *Lovell v. Williams*, 125 Mass. 439; 3 Ell. Ev. § 1633, and cases cited; Mech. Agency, §§ 84-86.)

The doctrine is likewise well established that a person may be estopped from denying the agency of another where he has held the other out as his agent and induced the public to believe that the relation of principal and agent existed. The doctrine is stated in the following language in volume 2 of the fourteenth edition of Kent's Commentaries, at page *615:

"So, where a broker had usually signed policies of insurance for another person, or an agent was in the habit of drawing bills on another, the authority was implied from the fact that the principal had assumed and ratified the acts; and he was held bound by a repetition of such acts, where there was no proof of notice of any revocation of the power, or of collusion between a third party and the agent."

Suppose the plaintiff could establish by evidence that all of the checks drawn upon defendant's bank account previous to the transaction in question had been signed by the husband with her knowledge and consent: it could hardly be said that this would not tend to prove general authority of the husband to sign checks or that

plaintiff should be restricted in his proof to evidence showing authority to sign the particular check. One of the reasons urged for the exclusion of the testimony is that the pleadings show that the transaction for which the check was given was one in which the husband alone was interested, but the purpose for which the check was to be used is not controlling. The theory of the plaintiff was that the husband had general authority to sign defendant's name to checks for his own as well as for her business. It is to be observed that the question is not whether the offered instances fully prove the agency, but merely whether they should be received as having probative value. In this respect the value of the evidence depends upon circumstances, like the proof of any habit or custom. It was said by Lord Chief Justice Ellenborough that "one act undisturbed does not make a custom, but it will be evidence of a custom." (*Roe v. Jeffery,* 2 Maule & S. [Eng.] 92, 93.)

Some of the questions to which objections were sustained were preliminary in their nature, but they showed the purpose for which they were asked. A party is not required to prove all the material facts upon which he relies by a single witness or to embrace all the issues in a single question. The witness may be unfriendly and yet the party may call him to prove one of several relevant facts. In this case the plaintiff was not required to prove by the defendant that she authorized her husband to sign her name or that she had acquiesced in what he had done, but the purpose of the question was clearly to show that certain checks had been destroyed, in order to lay a foundation for secondary evidence. The other questions were competent for the purpose of establishing the authority of the husband generally to sign checks upon her account.

The judgment is reversed and a new trial ordered.