Argued December 16, 1912, decided January 7, rehearing denied
February 18, 1913.

## WEST SIDE LUMBER & SHINGLE CO. *v.* HERALD.*

(128 Pac. 1006.)

**Estoppel—Pleading—Necessity—Estoppel in Pais.**

1. The complaint in an action to foreclose a mechanic's lien alleging delivery for and use in the building of lumber of a certain value, and the answer being a general denial of the material allegations of the complaint, plaintiff, without pleading it, could prove conduct of defendant's husband as her agent in making payment for certain of the loads as constituting an estoppel in pais as to them.

**Mechanics' Liens—Furnishing Material—Evidence.**

2. Evidence in an action to foreclose a mechanic's lien held sufficient to establish delivery for and use in the building of all the lumber claimed, with certain exceptions.

**Mechanics' Liens—Claim—False Statements.**

3. Creation of a mechanic's lien will not be defeated because of the inclusion in the claim of lien of some lumber not delivered or used, claimant having reasonably believed it to have been left at the proper place for use in the building, but reduction will be made therefor.

**Mechanics' Liens—Check for Lumber to Date—Effect.**

4. The words "for lumber to date" in a check given by the property owner to a materialman will not prevent recovery against the property for lumber theretofore delivered to, but not paid for by, such owner, but for which the materialman had given an improper credit for money paid by the contractor, which should have been, and afterwards was, credited to the account of another, from whom the contractor got it.

From Multnomah:  HENRY E. McGINN, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by the West Side Lumber & Shingle Company, a corporation, against A. G. Herald, doing business

---

*The authorities on the question of the effect of filing an excessive mechanic's lien are reviewed in a note in 29 L. R. A. [N. S.] 305.
REPORTER.

as A. G. Herald & Co., and Pauline Waidt to foreclose an alleged lien. The complaint states the capacity of the plaintiff, and alleges, in effect, that a contract was concluded whereby Herald undertook to construct a building for Mrs. Waidt, and that the plaintiff at Herald's request delivered to him lumber to be used and which was employed in the erection of her house, which material, less a discount of $34.82, was of the value of $545.41, on account of which only the following sums had been paid, to wit, June 18, 1909, $313.45, and August 5th of that year $116.37 or $429.82, thereby leaving due $115.59.

The answer denied the material averments of the complaint, and, the cause having been tried, the court concluded that the evidence received was insufficient to establish a delivery of material whereby any money remained due, and thereupon dismissed the suit, from which decree the plaintiff appeals.    REVERSED.

For appellant there was a brief over the names of *Messrs. Sweek, Fouts & Shelton,* with an oral argument by *Mr. J. Frank Shelton.*

For respondents there was a brief over the names of *Messrs. Cake & Cake,* with an oral argument by *Mr. William M. Cake.*

MR. JUSTICE MOORE delivered the opinion of the court.

The transcript shows that on May 7, 1909, the defendant Mrs. Pauline Waidt owned lots 15 and 16, in block 5, Edendale addition to Portland, which real property is situate at the corner of East Forty-First and Yamhill streets, in that city. As she intended to have a dwelling erected on the premises, her husband on that day entered into a written agreement on her behalf with the defendant A. G. Herald, whereby the latter stipulated that, in consideration of $2,800, he would furnish the material and supply the labor necessary to complete the structure. The contract provided that, when any bills were pre-

sented to Herald for labor or material, Mr. Waidt would liquidate the demands by issuing checks, which written orders should evidence the receipt of money paid on account of the agreement. At the time Mrs. Waidt's building was being constructed, Herald was also engaged in putting up houses for other persons in Portland, and the plaintiff was furnishing the materials therefor. It was the custom of plaintiff's agents when any lumber was sent out from its mills on a wagon to prepare one original and two duplicate bills of the material, the copies being handed to the teamster, who delivered one transcript to the person receiving the lumber, and from the latter he would secure a written acknowledgment of such delivery, indorsed on the other copy, which he returned. The plaintiff on June 8, 1909, had sent to Herald 10 wagon loads of lumber invoiced at $348.27, on which a discount of 10 per cent was allowed, thereby valuing the material at $313.45, which was paid on the 17th of that month by Mr. Waidt's check. Thereafter and prior to July 9, 1909, the plaintiff sent to Herald five more wagon loads of lumber billed to East Forty-Second and Yamhill streets; the material being rated at $92.32. The receipt of this lumber was acknowledged by J. V. Hibbs. Herald on July 20, 1909, paid plaintiff $110 without directing him how the sum should be applied, whereupon credit therefor was entered upon its books as for lumber furnished for Mrs. Waidt's building. The plaintiff on July 17, 1909, and the following day, sent to Herald two more loads of lumber, billed and receipted for as last above, the material being appraised at $116.37, which sum Mr. Waidt discharged on the 31st of that month by a check on the face of which he wrote: "For finishing lumber to date." After that payment was made, but prior to September 9, 1909, the plaintiff sent three other loads of lumber, billed to Herald at East Forty-Second and Yamhill streets, and receipted for by J. V. Hibbs; the material being listed

at $23.27. The plaintiff on September 27, 1909, learning that the sum of $110 so credited was erroneously noted on its books, changed the entry to the account of the person who had paid the money to Herald, and deducted that sum from the credit that had been given for the material asserted to have been delivered at Mrs. Waidt's house, thereby showing an indebtedness of $115.59, to secure the payment of which the lien herein was filed, and this suit was instituted.

No acknowledgment was indorsed on duplicate bills received in evidence tending to show any delivery of material at Mrs. Waidt's lots May 17, 1909, as per wagon load tickets enumerated, and for lumber invoiced as follows: No. 1199, $66; 1204, $35.20; and 1216, $25.60. Original bill No. 1281, for a wagon load of lumber purporting to have been delivered to Herald at East Forty-First and Yamhill streets, and valued at $36.01, was not subscribed by any person. The teamsters who it is claimed had delivered these four wagon loads of material invoiced at $162.81 could not be secured as witnesses, and the bills referred to were the only direct evidence received tending to show that the lumber was left at Mrs. Waidt's premises. The four loads, however, formed a part of the ten hereinbefore referred to, the value thereof, after allowing the discount, being placed at $313.45, which remainder, it will be remembered, was paid June 17, 1909, by the check of Mr. Waidt. He on May 17, 1909, receipted for a wagon load of lumber as evidenced by the duplicate bill sent up with the transcript.

1. The answer as far as involved herein contains practically a general denial of the material averments of the complaint, and a reply was neither necessary, nor interposed. The plaintiff therefore had no opportunity to plead the conduct of Mrs. Waidt's husband as her agent in making such payment as constituting an estoppel *in pais* as far as the 10 loads of lumber were affected by

the settlement of that part of the account, which adjustment is conclusive as to that portion of the demand. *Morback* v. *Young*, 58 Or. 135 (113 Pac. 22).

2. Nine of the 10 loads of lumber delivered after that payment was made were billed to Herald at East Forty-Second and Yamhill streets, presumably a block east of Mrs. Waidt's premises. The duplicate bills for that material received in evidence disclose that they were signed by J. V. Hibbs, who as a witness for the plaintiff testified that from May, 1909, until after September of that year he was Herald's foreman in charge of the construction of Mrs. Waidt's house, and subscribed his name to such load checks. In answer to the question:

"Now, I will ask you to state whether or not the lumber and material that is described in each of these slips was received by you at the time that you signed these slips?"

He replied: "Yes, sir."

Further, in the examination he was asked:

"Now, I wish you would state to the court, Mr. Hibbs, whether or not all of the lumber and material which was received there by you was used in the construction of that building?" and he answered: "As far as I know, it was."

The duplicate bill for one of the 10 loads of lumber last referred to, invoiced at $13.04, and billed to Herald at East Forty-Second and Yamhill streets, was receipted for by "Welch." No testimony was offered tending to prove that this load of material was ever delivered at Mrs. Waidt's property. W. Fritchie, the architect who prepared the plans and specifications for the house erected by Mrs. Waidt, appearing as her witness, testified that he was at the building nearly every day while it was being constructed; that he had carefully examined all the lumber used in her house, and estimated the worth thereof to be $693.86; that of this sum material had been furnished by other parties of the value of $228.28,

thereby leaving $465.58 as the worth of the lumber supplied by the plaintiff. This testimony is corroborated by E. C. Wegman, a contractor and builder who had been engaged in the business about 20 years. No allowance, however, was made by these witnesses for waste of material. When it is remembered that the worth of the lumber furnished by the plaintiff, less the discount, was $545.41, or only $79.83 more than thus estimated, the difference is not so great, when the value of the lumber left in the basement after the house was finished is taken into account. Fritchie testified that the worth of that material was $27.22, and in making a potato bin Mr. Waidt had used a part of such lumber valued at $9.65. Deducting from $79.83, the difference between the value of the material furnished by the plaintiff, and the architect's estimate of the lumber incorporated into the building, $27.22, the worth of the lumber left in the basement, there remains $52.61, which does not appear to be unreasonable for waste in cutting such a quantity of material.

3. It is insisted by defendant's counsel that since the plaintiff's proper agent, before filing any claim of lien, was notified by Mrs. Waidt to take away the lumber remaining in the basement, but not having complied with that request, or given any credit for the value of such material, the charge sought to be imposed did not contain a true statement of plaintiff's demand, and, this being so, no lien attached to the real property. Whatever the rule may be with respect to such inquiry the principle insisted upon ought not to defeat the creation of a lien on account of an alleged false statement respecting the quantity or value of the material involved, for the lumber having been actually delivered or reasonably believed to have been left at the proper place, to be used in the erection of a dwelling, a foundation was laid whereby a charge against the real property could be imposed,

which claim, however, was subject to a reduction upon proof that the material was not delivered at the premises described or used in the construction of a building thereon, as alleged. The complaint avers that lumber was furnished for "and used in" the erection of Mrs. Waidt's house. It will be remembered that the evidence shows that there was left in the basement material of the value of $27.22 and that a part thereof worth $9.65, had been used in making a potato bin, thus showing that lumber of the value of $17.57 remained after the house was completed, which material never became of part of the structure as alleged in the initiatory pleading.

4. The check on which was written, "For finishing lumber to date," did not prevent a recovery of the value of material theretofore delivered, on account of which an improper credit had been given, for no part of the sum erroneously entered on the plaintiff's books had been paid by Mrs. Waidt.

The demand of $115.59 should be diminished by $13.04, the invoice price of a load of lumber receipted for by Welch, and $17.59, the worth of the unused material, or $30.63, thereby leaving due $84.96. The decree will therefore be reversed, and one entered here foreclosing the lien and directing a sale of the premises to satisfy the sum so awarded.                    REVERSED.