Argued November 2, affirmed November 30, 1960

# WINTERS *v.* SHELTON ET UX

357 P. 2d 284

*Roger L. Dick*, The Dalles, argued the cause for appellant. On the briefs were Dick & Dick, The Dalles.

*Teunis J. Wyers*, Hood River, argued the cause and filed a brief for respondents.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and KING, Justices.

KING, J. (Pro Tempore)

This is a suit by the plaintiff, seeking specific performance of a contract of sale of personal property, or damages in lieu thereof if specific performance is impracticable.

The defendants were the owners of the stock, fixtures, equipment and good will of a poolroom and beer parlor known as "Shelton's Pastime" in Hood River, Oregon, for some years prior to July, 1955.

The plaintiff, Earl J. Winters, and Herman Van Ras were employed by the defendants at a salary of $65 per week each, sometimes in conjunction with others, to operate the place for the defendants.

On July 7, 1955, the defendants entered into a contract with the two employees, Earl J. Winters and Herman Van Ras, for the sale of the premises. While the contract was dated July 7, 1955, the buyers actually

took possession at the close of business on June 30, 1955.

The business was known to all the parties to be particularly lucrative during the last six months of the year and very slack during the first six months of the calendar year. This was caused by the fruit harvesting season and the large number of migrant workers during the harvesting period.

The contract of sale provided for a total purchase price of $21,000. No down payment was required. Minimum payments of $300 per month with interest at 4% on the unpaid balance were provided, and in addition to that, the entire net profit, if any, was to be paid the sellers on the contract. It was provided that each of the buyers should be entitled to draw $70 per week as their salaries and living expenses, before figuring net profits. The contract also provided that during the periods of good business the buyers could make larger payments if they wished, and then they in turn could make smaller or even no payments during slack periods, so long as the average was up to $300. The contract also provided that the buyers should keep accurate records and books of account showing their business transactions, so that net profits could be determined readily.

The contract also provided that the plaintiff and Van Ras should devote their full time and energy to the business.

The business was operated by the buyers until the 22nd day of June, 1956, when Herman Van Ras assigned his interest in the contract to Earl J. Winters, the plaintiff, and was released by the Sheltons.

Shortly thereafter Ernest Lund, a brother-in-law of the plaintiff, became a partner with Mr. Winters, and they continued the operation until August 28, 1956,

when Mr. Lund closed the place at the end of the night shift, changed the lock on the door and turned the key over to the defendants. Mr. Winters demanded the key, was refused, then removed the locks, and entered and conducted the business until November 15, 1956, when the property was returned to the defendants after the entry of a judgment for the defendants in a forcible entry and detainer action in the Hood River justice court.

The plaintiff made payments to the defendants on the principal in the total amount of $3,630 to November 22, 1955, and nothing further until July 30, 1956, when $200 was paid, and another payment of $200 on August 14, 1956. The interest was paid on the approximate payment dates, although at times the payments were late. Some later payments were made and returned by the defendants or tendered back to the plaintiff. No accounting of profits was made or payment tendered, and there was nothing to show profit or loss other than the statement of the plaintiff to the effect that there were no profits.

The principal question to be determined is: Should specific performance of the contract be granted the plaintiff in this particular case? If specific performance should be proper in the case but impractical to apply, then should damages be granted in lieu thereof?

The trial court, after hearing all the testimony, examining the evidence submitted and considering the arguments and briefs, entered a decree for the defendants, and plaintiff brings this appeal.

■ There was no question raised in the lower court, and none raised here, that this was not the proper type of case to be brought under specific performance, so it will be treated as such and determined on that basis. Likewise, no objections were raised as to the propriety

of determining the damage, if any, to the plaintiff, if he was so entitled to specific performance of the contract and that it was found to be impracticable. For very thorough discussions of specific performance as applied to contracts on personal property, see: *Kleinschmidt v. Central Trust Co. et al.*, 103 Or 124, 203 P 598; *Temple Enterprises v. Combs*, 164 Or 133, 100 P2d 613, 128 ALR 856; *Pittenger Equip. Co. v. Timber Struct. Co., Inc.*, 189 Or 1, 217 P2d 770.

■ It must be remembered, however, that the plaintiff has chosen the equitable remedy of specific performance and is confined to that remedy and equitable compensation, if any, derived therefrom, rather than a law action for damages for breach of contract.

In *Caveny v. Asheim et al.*, 202 Or 195, 217, 274 P2d 281, Mr. Justice WARNER explains the difference in these words:

"* * * They read equitable compensation, a species of substitute relief sometimes awarded in suits for specific performance, as synonymous with damages for breach of contract given in law. Although similar in character, they are not in fact identical remedies; they arise from different motives and are based upon different principles."

See also *Van Horn Construction Corp. v. Joy et ux.*, 186 Or 473, 481, 207 P2d 157; Pomeroy, Specific Performance of Contracts (3d ed) 902, § 436.

The trial court's decree for the defendants, as shown by the memorandum opinion, was founded on its determination that the facts showed the plaintiff was not entitled to specific performance by reason of his own failure to abide by the terms of the contract, and for the further reason that the same matters were determined in the justice court hearing on forcible

entry and detainer, and review thereof by the circuit court, and was res judicata.

49 Am Jur 53, Specific Performance § 40, says:

"The complainant coming into equity for specific performance must show not only that he has a valid, legally enforceable contract, but also that he has complied with its terms by performing or offering to perform, on his part, the acts which formed the consideration of the undertaking on the part of the defendant, or that he is ready, able, and willing to perform his obligations under the contract, in their entirety, * * *."

See also *Smith v. Martin*, 94 Or 132, 185 P 236; *Tiggelbeck v. Russell et al.*, 187 Or 554, 213 P2d 156; *Percy v. Miller et al.*, 197 Or 230, 251 P2d 463.

We agree with the trial court that the plaintiff did not fully and faithfully perform the terms and conditions of the contract and did not show that he was ready, willing and able to perform his part of the contract, or give any sufficient reason for such failure.

The plaintiff failed to show that he kept accurate records and books of account, from which the net profits could be determined and additional payments, if any were due, made to the defendants. He did mention a bookkeeper, but he was not called to testify, and the records and testimony produced were so fragmentary that it would be impossible to determine profit or loss from them. Proper record and account keeping was one of plaintiff's duties under the contract.

It might be mentioned here that at the start of the contract the plaintiff and his partner, Mr. Van Ras, with the endorsement of the defendant Hal Shelton, borrowed $2,000 from the bank for operating capital. This was to be repaid at the rate of $120 per month, plus interest. The first payment was made out of the

individual buyer's wages or draw money; thereafter all payments were made out of the profits of the business, which should have gone to the defendants under the contract provision. The plaintiff claims he had defendants' permission to do this, but the evidence preponderates the other way.

There were also the payments of plaintiff's state and federal income taxes amounting to $734 out of money in the safe which was used generally for paying bills. It is not entirely clear from the evidence whether this income-tax money was from profits, whether it was money of the plaintiff, or money belonging to the partnership of Winters and Lund; but in any event, it showed a very slipshod bookkeeping system. Most current payments for merchandise and accounts were made from cash in the safe and slips put in, very vaguely indicating what the withdrawals were for.

■ Plaintiff contends that it was agreed that the rent payments under the lease would be reduced from $300 minimum to $200 after the change in partners in July, 1956, and that his July and August payments were in accord with that change.

We believe that by a heavy preponderance of the evidence, including the testimony of both the plaintiff's former partners, the original contract was in default before July, 1956, and that this was complained about by defendant Hal Shelton and discussed with the plaintiff and both his partners. The evidence shows there was a tentative understanding that a new contract would be entered into lowering the monthly payment to $200, plus certain other conditions, including Mr. Lund's being taken in as a partner of plaintiff. The defendant Hal Shelton had confidence in Mr. Lund and approved the change.

A contract was drawn as outlined. The plaintiff refused to sign it, without promptly notifying the defendant; yet he claims the right to have the old contract reinstated at the new $200 per-month payment. This he was not entitled to do, and he could not ignore the balance of the proposed contract.

■ The plaintiff was not entitled to specific performance of the contract, on account of his own failure to conform to its terms. It likewise follows that he is not entitled to damages based on the theory of specific performance.

Some argument was made that the plaintiff was losing all the payments he had made. We again point out that plaintiff himself elected to proceed on specific performance. We also note that plaintiff put no money into the business as a down payment. He received greater wages than he was receiving at the same work before. He secured operating money from the bank by defendants' endorsement and then failed to account properly for the profits or losses of the business. We have no testimony how the inventory of stock stood at the end of plaintiff's possession. There was returned to the plaintiff by the lower court $1,223.70 interest and rental payments paid and tendered back to him, after the difficulties arose.

Under this view of the case it became unnecessary to prolong this decision by going into the question of res judicata raised by the second assignment of error.

Affirmed.