Argued and submitted November 24, 1980, reversed and
remanded with instructions March 23, 1981

ROSE et ux,

*Appellants,*

*v.*

WEBSTER et al,

*Respondents.*

(No. 78-7832, CA 16832)

625 P2d 1329

Sidney J. Nicholson, Florence, argued the cause and filed the brief for appellants.

Gary M. Bullock, Portland, argued the cause and filed the brief for respondents Dan M. Webster and Deborah L. Webster.

No appearance for respondents Kirby F. Hansen and Maxine Rae Hansen.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

**THORNTON, J.**

This is an action for forcible entry and detainer. ORS 105.105.

Plaintiffs appeal from a judgment for defendants on their counterclaim which declares that defendants and their successors in interest have an irrevocable license to use a tideland area, currently under lease to plaintiffs by the State of Oregon, for the purpose of maintaining thereon that portion of their marina and moorage facility which extends onto plaintiffs' property. Plaintiffs assign as error:

1) the "finding" that the parties had an oral lease agreement covering the tideland area in question and that defendants had not breached that agreement;

2) the holding that defendants have an irrevocable license to use the area;

3) the finding that defendants would suffer irreparable harm should they be compelled to remove their facilities from plaintiffs' property; and

4) the holding that defendants are not liable for any further rent to either plaintiffs or the State of Oregon.

Plaintiffs are owners of a strip of land on the Siuslaw River in Cushman, Oregon, near Florence. Defendants Webster are former owners of Siuslaw Marina, which is located next to plaintiffs' parcel. Defendants Hansen are purchasers of the marina from the Websters and are in actual possession of the marina. Hansens filed no appearance on this appeal and subsequent references to "defendants" refer to the Websters, unless noted.

In 1964, defendants' predecessors, the then owners of Siuslaw Marina, obtained a permit from the Corps of Engineers to construct a dock and moorage facility on what is now defendants' parcel. A sea wall was erected on plaintiffs' land and the dock extended into plaintiffs' tidelands. Plaintiffs, the owners of the riparian rights appurtenant to their parcel, apparently acquiesced and even helped in the construction.

In 1967, plaintiffs and defendants' predecessors entered into a ten-year lease of a parking strip located on

plaintiffs' parcel and the above tidelands.[1] Plaintiffs agreed to lease the area to the marina in exchange for the right to pasture cattle on land across the river owned by one of the principals of the company and to moor three boats at the marina facilities without charge. Sometime in the early 1970's, the docks and moorage facilities were largely destroyed. The present docks were constructed in 1971 or 1972.

In 1977, the lease terminated by its own terms. Sometime prior thereto, the State of Oregon began its submerged and submersible lands leasing program and gave plaintiffs a right of first refusal as former holders of riparian rights in the tideland in question. On May 1, 1976, the tideland area in question was leased by plaintiffs from the state for $150 per year. In 1977, plaintiffs and defendants negotiated a new year-to-year oral lease agreement covering the tidelands and the parking strip. The terms of this oral agreement are in sharp dispute. Plaintiffs contend defendants ultimately agreed to pay the cost of the tidelands lease in return for use of the tidelands area and that the parties failed to come to any agreement concerning the parking strip. According to plaintiffs, they told defendants that, at any time after defendants paid the $150 rental, the tidelands lease could be transferred to defendants' name. Defendants contend they agreed to pay the tidelands lease for use of the parking strip and that consideration for use of the tidelands was free moorage of plaintiffs' boats. Defendants paid $150 in 1977, but declined to pay in 1978.

Plaintiffs filed this FED action to recover possession of the tidelands and the parking strip. Defendants filed an "affirmative defense and counterclaim" seeking a declaration that they had right by virtue of the Corps of Engineers' permit to maintain the moorage facilities and that the lease of the tidelands to plaintiffs by the State did not convey to plaintiffs any right of ownership or possession which would permit them to eject defendants from the tidelands.

---

[1] It is not clear from the lease terms that the lease was intended to convey a leasehold in the tideland area appurtenant to the parking strip. However, both parties assume in their briefs that the lease does cover the tidelands.

The trial court found that defendants had failed to pay the $150 in 1979 and that plaintiffs were therefore entitled to possession of the parking strip. The court further found that plaintiffs were not entitled to eject defendants from the tidelands area because the defendants had acquired an irrevocable license to use the area and would undergo a substantial hardship if they were compelled to remove their facilities. Such a right exists, the trial court held, without the necessity of defendants' paying rent to anyone for the tidelands lease.

We consider first plaintiffs' assignments of error with regard to the holding that defendants have an irrevocable license. If defendants have such a license to use the tidelands, it is immaterial that a lease may have existed which was breached by defendants. As discussed below, the trial court's findings in this matter do not expressly indicate how it would have resolved the dispute with respect to the terms of the lease. Plaintiffs attack the determination of an irrevocable license on three grounds: 1) defendants may not assert an irrevocable license at a hearing in an FED action; 2) the defense is not within the scope of the pleadings; and 3) the evidence is insufficient to support a finding of equitable estoppel necessary to sustain the irrevocable license theory.

■ An equitable defense may be raised in an FED action. *Port of Siuslaw v. Ram Dev.,* 26 Or App 873, 876, 544 P2d 631 (1976). Equitable estoppel, upon which a finding of irrevocable license depends, is an appropriate defense in such an action. *Fry v. D. H. Overmyer Co., Inc.,* 269 Or 281, 303-04, 525 P2d 140 (1974).

■ It is true, as plaintiffs contend, that defendants' affirmative defense did not plead facts sufficient to constitute equitable estoppel. At trial, however, defendants offered evidence, without objection, of plaintiffs' aid and acquiescence in construction of the original dock and the harm that would result from being obliged to remove the portion of the moorage facilities on plaintiffs' tideland. Where evidence which supports a particular theory comes in without objection, no objection that it was outside the scope of the pleadings will be entertained for the first time on appeal, unless it appears that the appellant was prejudiced. *Farley v. United Pacific Ins. Co.,* 269 Or 549, 559-61,

525 P2d 1003 (1974). There is no argument by plaintiffs that they were prejudiced; the record shows that plaintiffs were aware of defendants' theory and cross-examined the witnesses on the factual matters underlying the irrevocable license theory.

■■ A license is a privilege arising from a landowner's consent to use his property in a manner which would otherwise be tortious. *Rouse v. Roy L. Houck Sons',* 249 Or 655, 660, 439 P2d 856 (1968). Such licenses, which are usually revocable at will, may become irrevocable by virtue of estoppel where the landowner's consent induces the licensee to expend large amounts for permanent improvements in reasonable reliance upon the promise to allow permanent use of the land. *Brown v. Eoff,* 271 Or 7, 11, 530 P2d 49 (1975); *Brusco Towboat v. State Land Bd.,* 284 Or 627, 645, 589 P2d 712 (1978).

Plaintiffs concede that the original docks were built in 1964 with their help and acquiescence. While defendants' predecessors undoubtedly relied on this permission and made improvements, there is no evidence that the improvements were made with the expectation that permission would continue as long as operation of the marina was profitable. The fact that, in 1967, they entered into a lease for a fixed term of years is inconsistent with their contention on this point. That lease provided that the lessee has the right and the duty to remove any improvements on the property within 30 days of termination of the lease. Although the lease specifically refers at one point to an option to renew, there is no provision in the lease agreement giving such a right, nor evidence of a collateral agreement. In any event, there is no evidence the lease was renewed pursuant to any option.

■ There appears to be no reasonable expectation that plaintiffs would continue to lease the tideland and parking strip to defendants indefinitely. Even assuming that defendants' predecessors reasonably believed in 1964 that plaintiffs' consent was unlimited in terms of time, the improvements in place at that time of this action were made in 1971 or 1972 during the operation of the lease agreement and could not have been made in reliance upon

consent which antedated the lease. We conclude that defendants have failed to show reasonable reliance on any promise by plaintiffs in erecting their docks.

■■ The permit to construct the original docks issued by the Corps of Engineers does not give defendants any right to perpetual use of plaintiffs' leasehold. It merely authorizes construction of the proposed facility and certifies that it will pose no significant obstruction to navigation in the tideland area. 33 USC § 565. The State of Oregon, not the United States, is the ultimate owner of the tidelands in question, and plaintiffs held the riparian rights to the area subject to that ownership. *Land Bd. v. Corvallis Sand & Gravel,* 283 Or 147, 150, 582 P2d 1352 (1978); *Brusco Towboat v. State Land Board, supra* at 646. We hold, therefore, that defendants have no irrevocable license to maintain their facilities on plaintiffs' tidelands.

Contrary to plaintiffs' first assignment of error, the trial court's findings contained no express determination as to the existence of a lease between the parties respecting the tidelands, or breach thereof.[2] We conclude, however, that implicit in the trial court's finding that defendants had acquired a license to occupy the tidelands was an implied finding or determination that the lease between the parties covered both the parking lot and the tidelands, that the consideration therefor was unitary, that defendants had lost their lease rights by non-payment of the rent, and that absent a license defendants had no rights in those tidelands. Defendants concede that plaintiffs are entitled to return of the parking strip for defendants'

---

[2] The actual findings were as follows:

"1. That the defendants and their predecessors have acquired an irrevocable license to use the submerged area covered by the tideland lease between the State Land Board and the plaintiff.

"2. There is clear evidence that the dock facilities which rest on and over the land covered by the tideland lease were placed in position many years ago with the acquiescence of the plaintiffs, but with the active participation of the plaintiffs.

"3. There were substantial expenditures of time and money that have gone into developing the facility where the marina is located and a substantial hardship would be worked upon the defendants if they were to have to remove the improvements."

failure to pay the $150 rent in 1978 and 1979. It follows that plaintiffs are entitled to possession of the tidelands. We therefore remand the case for entry of an order granting plaintiff immediate restitution of the tideland area in issue.

Reversed and remanded with instructions.