Argued and submitted May 28, affirmed December 22, 1982

HILL et ux,
*Appellants,*
*v.*
OLAND et ux,
*Respondents.*

(No. 78-0088; CA A22905)

655 P2d 1088

Richard D. Curtis, Eugene, argued the cause for appellants. With him on the brief was Curtis, Hendershott & Strickland, Eugene.

James B. Ehrlich, Eugene, argued the cause for respondents. With him on the brief was Larry O. Gildea, P. C., Eugene.

Before Thornton, Presiding Judge, and Warden and Van Hoomissen, Judges.

WARDEN, J.

Thornton, J., dissenting.

**WARDEN, J.**

Plaintiffs, buyers, appeal from the decree of the trial court denying specific performance of a contract for the sale of land owned by defendants as tenants by the entirety. The negotiations of the parties resulted in a document signed by plaintiffs and defendant Gene Oland only on April 21, 1977. Plaintiffs' complaint alleged that defendants were partners in the subdivision and sale of the property and that Gene Oland acted on behalf of the partnership in the entering into the contract. We affirm.

The facts are disputed. The following is a brief summary as we find the facts *de novo*. Defendants owned property that plaintiffs were interested in buying as a homesite. A meeting was arranged between Gene Oland and plaintiffs by Teryl Hill's father, Cecil Saxon, a land developer in the area. They met at least twice and on April 21, 1977, signed a document by which Gene agreed to sell the property to plaintiffs for $15,000, with a $4,000 down payment and the balance payable in monthly installments over 10 years. Plaintiffs were told before they entered into the contract that Sandra Oland's approval was necessary. Teryl Hill arranged a meeting with Sandra for the purpose of obtaining that approval.

Plaintiffs claim that that meeting took place before the signing of the April 21 agreement and that Sandra gave her approval. Defendants claim, on the other hand, that the meeting took place after April 21 and that Sandra did not give her approval to the sale but merely indicated that "* * * if it was the Lord's will that her and Mr. Hill moved up there, it would be so." Plaintiffs made the $4,000 down payment and five monthly payments. In October, 1977, Gene refused to accept further payments. On January 5, 1978, plaintiffs brought this action for specific performance or, alternatively, equitable compensation.

Plaintiffs contend that Gene was acting on behalf of his wife when he signed the land sale contract. They contend that he was actually authorized to act because of a partnership between the Olands or because he was acting as agent for his wife, or that Sandra should be estopped to deny that her husband was authorized to act on her behalf. They also argue that, even if Sandra is not bound by the

land sale contract, specific performance or equitable compensation can be ordered against Gene. Because plaintiffs did not plead estoppel or agency, we will not consider those arguments. *Farley v. United Pacific Ins. Co.,* 269 Or 549, 559, 525 P2d 1003 (1974); *Cody v. Ins. Co. of Oregon,* 253 Or 587, 592, 454 P2d 859 (1969); *Goddard v. Avemco Ins. Co.,* 43 Or App 39, 42, 602 P2d 291 (1979).

The dissent would have us decide this case on an estoppel theory on appeal, even though plaintiffs failed to plead facts out of which an estoppel might have arisen, by relying on language in *Rose v. Webster,* 51 Or App 293, 297, 625 P2d 1329 (1981). The rule as stated in *Rose* is that an objection that evidence supporting a particular theory was outside the scope of the pleadings will not be entertained *for the first time on appeal,* except in instances where it appears that the appellant has been prejudiced. The objection in this case was made at trial, before the entry of judgment. The case was tried and decided on the theory that defendants were partners as alleged in plaintiffs' complaint. Separate causes of action for trespass and deceit were alleged in the complaint and, on stipulation, separated for trial, but at no time did plaintiffs state a cause of action setting forth facts to support a theory of estoppel. Even after defendants made their objection in final argument, plaintiffs did not move to amend to conform the pleadings to proof of an estoppel theory.

In *Marshall v. Wilson,* 175 Or 506, 154 P2d 547 (1944), relied on by the dissent, the defendants, husband and wife, filed separate answers. In their reply to the answer of the defendant husband, the plaintiffs alleged facts giving rise to an estoppel, 175 Or at 511, and in their reply to the answer of the defendant wife, plaintiffs also plead facts giving rise to an estoppel, 175 Or at 513. In *Young v. Neill et al,* 190 Or 161, 220 P2d 89, 225 P2d 66 (1950), it appears that plaintiff alleged that defendants should be estopped to deny the validity of the lease. 190 Or at 166. And, in any event, failure to allow the plaintiff to claim that the defendants should be estopped would have been prejudicial to the plaintiff. *Rose v. Webster, supra.*

■ ■ We consider then whether the Olands acted as partners in the partition and sale of their land. It is true, as

plaintiffs point out, that a partnership for the purpose of dealing in real estate may be established by parol evidence. *Terry v. Simmons,* 261 Or 626, 496 P2d 11 (1972). However, we agree with the trial court's determination that there was no partnership between the Olands. Under the Uniform Partnership Law,

> "Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such coowners do or do not share any profits made by the use of the property." ORS 68.120(2).

The test for determining the existence of a partnership is whether the parties intended to establish such a relationship. *Stone-Fox, Inc. v. Vandehey Development Co.,* 290 Or 779, 626 P2d 1365 (1981); *Hayes v. Killinger,* 235 Or 465, 385 P2d 747 (1963); "Unless the intent is clearly proved, the court will not construe a family arrangement as a partnership. * * *" *First Nat. Bank of Eugene v. Williams,* 142 Or 648, 661, 20 P2d 222 (1933).

We see no manifestation of intent on the part of the Olands to be partners in the sale of property. They held the property as tenants by the entirety, with Gene handling most of the business matters and Sandra reserving the right to approve or disapprove land sales. They also shared in the profits from the sale of property, in that the money received was deposited in a bank account to which both had access and from which both withdrew money. Those facts do not establish an intent to form a partnership.

Because no issue of estoppel or agency was pleaded and because we find there was no partnership between the Olands, Sandra is not bound by the agreement signed by her husband. The questions remain whether Gene Oland is bound by that agreement and whether specific performance or equitable compensation may be ordered against him. The parties presented evidence at trial and have argued in their briefs about whether Sandra consented to the sale of the property to plaintiffs, but neither party has tied the issue of consent to any legal theory pertinent to the resolution of this case. In our view, however, the issue of Sandra's consent is relevant to the question of whether the contract between plaintiffs and Gene is enforceable. It is clear from

the evidence, and plaintiffs admit, that they were informed by Gene that Sandra's approval was necessary before the land could be sold.

The Restatement (Second) Contracts § 224, defines the term "condition" as follows:

"A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."

The question whether Sandra approved the sale of the land to plaintiffs is, therefore, relevant to whether Gene's performance under the contract ever became due.

"Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused." Restatement (Second) Contracts § 225 (1981).

At the meeting between Teryl Hill and Sandra Oland, no explicit request for approval was made. Both testified that they knew that the purpose of the meeting was for Sandra to determine whether she would approve of plaintiffs' purchase of the property. The testimony of the two women regarding what took place at the meeting differs, not so much in content as in inference. Teryl testified that the meeting was pleasant and that Sandra had said "[s]he knew that God would put the people up there who he wanted up there." Teryl believed that she had the necessary approval. Sandra agreed that she had made that statement, but she testified that she had meant it to indicate that she was maintaining an open mind about the matter.

Plaintiffs argue that Sandra knew that a down payment had been received and that monthly payments were being made. They contend that the fact that she did not object indicates that she had consented to the sale. Sandra testified, however, that she had considered the $4,000 to have been paid so that the land would be held for plaintiffs. She further testified that she had been unaware of the monthly payments until some time later. There was also testimony that plaintiffs had been told in July that it appeared that Sandra would not approve of the sale but that they insisted on continuing to make payments. There is also conflicting testimony whether plaintiffs entered on

the property and made improvements and, if they did, whether Sandra knew it.

■■■■ The trial court determined that Sandra had not given her consent to the sale. To a large extent, that decision depends on an assessment of credibility of the witnesses. Because the trial court was able to observe the witnesses, we give substantial weight to its decision. We conclude that Sandra did not consent to the sale of the property. It follows, then, that the event on which Gene's performance was conditioned did not occur. We conclude that the contract between Gene Oland and plaintiffs never became enforceable. Equitable compensation is available only when a contract, although otherwise enforceable, is for some reason unable to be specifically enforced. *Winters v. Shelton, et ux.,* 225 Or 104, 357 P2d 284 (1960); *see also Walker v. Mackey,* 197 Or 197, 251 P2d 118, 253 P2d 280 (1953). The trial court correctly denied specific performance and equitable compensation.

Affirmed.

**THORNTON, J.,** dissenting.

The majority summarily dismisses plaintiffs' argument that Mrs. Oland should be estopped to deny that her husband was authorized to act on her behalf on the ground that plaintiffs did not plead estoppel. Actually, plaintiffs' argument is that if Mrs. Oland failed to give her consent to the sale, she should now be estopped to deny consent. In any event, under the circumstances, I would conclude that plaintiffs are entitled to specific performance or, in the alternative, equitable compensation for damages sustained.

Plaintiffs alleged that Mr. and Mrs. Oland were the owners of the land at issue and acted as partners in selling the land to plaintiffs. They also alleged that the Olands, as husband and wife and as partners, failed to execute a deed to the land. Defendants answered, admitting that they were husband and wife and that they owned the land but denied the remainder of the complaint. Defendants did not assert Mrs. Oland's failure to sign the contract as a defense or as an affirmative defense.

Although it is true that plaintiffs did not plead estoppel in their suit for specific performance, during the course of the trial evidence supporting their theory of estoppel was admitted without objection.[1] In *Rose v. Webster,* 51 Or App 293, 297-98, 625 P2d 1329 (1981), we stated:

> "It is true, as plaintiffs contend, that defendants' affirmative defense did not plead facts sufficient to constitute equitable estoppel. At trial, however, defendants offered evidence, without objection, of plaintiffs' aid and acquiescence in construction of the original dock and the harm that would result from being obliged to remove the portion of the moorage facilites on plaintiffs' tideland. Where evidence which supports a particular theory comes in without objection, no objection that it was outside the scope of the pleadings will be entertained for the first time on appeal, unless it appears that the appellant was prejudiced. *Farley v. United Pacific Ins. Co.,* 269 Or 549, 559-61, 525 P2d 1003 (1974). * * *"

In *Farley,* the plaintiff attempted to recover under an insurance policy which excluded coverage for the claimed loss. The plaintiff argued that the defendant's agent had told him that the loss was covered. The plaintiff did not plead estoppel as the basis for coverage. The court noted that generally estoppel must be pleaded. 269 Or at 559. It also stated, "However, this court has also recognized an exception to the rule that the facts out of which an estoppel arises must be pleaded and that exception arises when the facts which justify the estoppel have been admitted in evidence without objection." 269 Or at 559-60. Further, the court stated:

> "The only objection that was made to the introduction of the evidence concerning Kent's construction of the policy terms had nothing to do with an unpleaded estoppel. In addition, it is apparent that defendant introduced all of its evidence refuting plaintiff's claim about what Kent told plaintiff concerning coverage. Where we can be certain that all of the evidence is in from both sides concerning whether an estoppel would be applicable, it would be honoring form over substance not to treat the issue as if it had been

---

[1] In their brief, defendants contend that they "objected at trial when those matters [agency, consent and estoppel] were raised." However, defendants' objection came *after* the evidence supporting those theories was admitted. The objection that defendants note took place during closing argument to the court.

pleaded. It may be that the parties were not even thinking in terms of estoppel until after briefing the matter on appeal, but, if it is apparent that all the evidence which bears upon the question has been introduced and the opponent of the party not pleading the estoppel has not been prejudiced, there appears to be no logical reason for not considering the issue if a rational and just determination of the case so requires." 269 Or at 561.

A perusal of the more than five volumes of transcript in this case convinces me that all the evidence from both sides concerning whether an estoppel would be applicable was introduced and defendants have not been prejudiced. As in *Farley,* there is no logical reason not to consider the issue, because a just determination of the case so requires.

The rule requiring estoppel to be pleaded by plaintiffs in their complaint is particularly harsh in a case such as this where defendants answered generally, denying the basis of plaintiffs' claim. A reply was not necessary, and thus plaintiffs were not afforded the opportunity to assert estoppel in a reply. *See generally, Mascall v. Murray,* 76 Or 637, 647, 149 P 517 (1915); *West Side Lumber & Shingle Co. v. Herald,* 64 Or 210, 213, 128 P 1006 (1913); *Morback v. Young,* 58 Or 135, 113 P 22 (1911). For the above reasons, I would consider plaintiffs' estoppel argument on review.[2]

On *de novo* review, ORS 19.125(3), I would conclude that the doctrine of equitable estoppel should be applied. As the Supreme Court noted in a case involving similar facts:

"This doctrine of equitable estoppel or estoppel *in pais* is that a person may be precluded by his act or conduct, or silence when it was his duty to speak, from asserting a right which he otherwise would have had. The one invoking such doctrine must show that he was entitled to rely upon such conduct, action or silence, that he acted thereupon and would be prejudiced if the doctrine of estoppel

---

[2] It is interesting to note that the majority concludes that the issue of Mrs. Oland's consent is relevant to the question of whether the contract between plaintiffs and Mr. Oland is enforceable. *See* 61 Or App at 89. Plaintiffs did not plead that the contract should be enforced as against Mr. Oland alone. Rather, the complaint alleged that Mr. and Mrs. Oland *as* husband and wife and *as* partners failed to perform their agreement and should *both* be required to specifically perform the agreement.

were not applied." *Marshall v. Wilson,* 175 Or 506, 518, 154 P2d 547 (1944).

In the present case, plaintiffs and Mr. Oland signed an agreement for purchase of the land. Plaintiffs paid Mr. and Mrs. Oland the down payment of $4,000 pursuant to the agreement. Plaintiffs also made monthly payments of $136.39 until the payments were refused in October, 1977. When negotiations for the purchase were taking place, Mrs. Oland did not object to the sale. Mrs. Oland made no objection to the sale until six months after the contract was signed. Plaintiffs, with the aid of Mr. Saxon, prepared the necessary partition of the land and subdivision plan. They took possession of the property by clearing and thinning trees and started work on culverts along the road adjoining the property. They also prepared plans, surveyed and obtained bids for the construction of their home. Mrs. Oland was aware that the above was taking place, yet failed to object. Further, in June, 1977, Mr. Oland sold another five-acre parcel to a third party by a deed signed by Mr. Oland only.

In *Young v. Neill et al,* 190 Or 161, 220 P2d 89, 225 P2d 66 (1950), the plaintiffs appealed from a decree denying specific performance of a business lease that the parties did not sign. In discussing whether the defendant's wife could avoid the lease even though defendant was bound, the court applied the doctrine of estoppel:

> "Where the issue is whether a husband was the agent of his wife, with the authority to act for her, evidence that he had previously acted for her in the same type of transaction is admissible. *Hawkins v. Windhorst,* 77 Kan. 674, 96 P. 48; *Sidle v. Kaufman et al.,* 345 Pa. 549, 29 A. (2d) 77; 41 C.J.S., 552 § 74; Restatement, Agency, 65 § 22.
>
> "The fact of the close relationship between the McGees; the fact that Mrs. McGee took part in the loan application at the bank and helped the Neills obtain a loan of $10,000.00 based on the assumption that there would be a lease; the fact that she had permitted her husband to conduct the business in his own name; the fact that she had permitted him to lease the butcher shop in his own name; the fact that she accepted rentals under the lease; the fact that she had knowledge of the lease as drawn by Briggs and did not object to the same until becoming

apprised of the Neills' divorce, and other facts adduced by the evidence, impel us to hold that Mrs. McGee was bound by the terms of the lease, and that both she and her husband are estopped to deny the validity of the same. * * *" 190 Or at 174.

The same considerations apply in the present case. Mrs. Oland should be bound by the terms of the contract signed by her husband, and both should be estopped to deny its validity. I would reverse and grant plaintiffs specific performance or, in the alternative, equitable compensation for damages sustained.