Argued November 15; modified December 29, 1944

MARSHALL ET UX. *v.* WILSON ET UX.

(154 P. (2d) 547)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY and HAY, Associate Justices.

*William S. Fort,* of Eugene, for appellants.

*H. E. Slattery,* of Eugene, for respondents and cross-appellants.

KELLY, J. On the 13th day of March, 1941, and for sometime theretofore, defendants, Carl Wilson and Rose Wilson, his wife, were the owners as tenants by

the entirety of the following described real property, to-wit:

Commencing at a point 149.2 feet west of the intersection of the west line of Fifth Street in the town of Springfield, Lane County, Oregon, extended with the north line of the Mohawk County road and thence north parallel with the said west line of Fifth Street 299.61 feet, thence due west 74.6 feet, thence south parallel with the said west line of Fifth Street 299.61 feet more or less to the north boundary line of the Mohawk County road and thence east on and along said boundary line 74.6 feet more or less to the beginning, all in what is known as the Seavey tracts lying north of Springfield, Oregon.

Plaintiffs, *inter alia,* allege that on said 13th day of March, 1941, by oral contract, defendants sold said premises to plaintiffs for the sum of $1,000.00, payable as follows: $200.00 down, and at least $15.00, including interest at the rate of 6 per cent per annum on the unpaid balance, per month, and that by said contract defendants agreed to convey said premises to plaintiffs by warranty deed upon the payment by plaintiffs of the consideration aforesaid and that said consideration was the fair and reasonable value of said property.

By his answer, after denying the allegations in plaintiffs' complaint, except as admitted, stated or qualified in the following averment, defendant Carl Wilson avers:

"This answering defendant avers that the defendants are husband and wife and have been such for a period of 23 years, and were such at all times herein expressed; and that the defendants are the owners as tenants by the entirety of the real estate described within the plaintiffs' complaint;

The defendant Carl Wilson states that sometime during the month of March 1941, he and the plaintiffs, William Marshall, made and entered into the following verbal contract relative to the sale of the said real estate to the said William Marshall, to-wit: That this defendant agreed to sell the said real estate to the said William Marshall for the sum of One Thousand Dollars ($1,000.00) of which the sum of Two Hundred Dollars ($200.00) was to be paid at the time and the balance to be paid at $15.00 per month which included interest at the rate of 6% per annum, and the said verbal contract further provided that the defendants owned the said real estate as tenants by the entirety, and that if the defendant Rose Wilson did not approve of the said contract or refused to sign the deed, that this defendant would refund unto the said plaintiff the said sum of $200.00, and that any payments of $15.00 per month was to go as rent; that at the time of making the said verbal contract these defendants were not in the possession of the said real estate, and that after the making of the said contract this answering defendant placed the plaintiffs in the possession of the said real estate and that they still hold possession; and defendant admits that plaintiffs have paid the total sum of both principal and interest the sum of $620.00 to apply upon the purchase price of the said real estate, of which 28 payments of $15.00 each have been made, and this answering defendant further states that the defendant Rose Wilson always disapproved of the said verbal contract, and that she refuses to execute any deed or other instrument of writing to convey the said real estate to the plaintiffs that prior to the time that the plaintiffs instituted this suit this answering defendant offered to tender unto the plaintiffs the said sum of Two Hundred Dollars ($200.00) pursuant to the terms of the said verbal contract, and has at all time be [been] able, ready, and willing to refund the said sum of Two Hundred Dollars ($200.00), and here-

with tenders into court with this answer the said sum of Two Hundred ($200.00)."

By her answer, defendant Rose Wilson denied the allegations of plaintiffs' complaint except as admitted, stated or qualified in the following statement, to-wit:

"This answering defendant states that the defendants are husband and wife and that they hold title to the real estate described within the plaintiffs' complaint as tenants by the entirety; that the title to the said real estate is registered and that these defendants hold transfer certificate of title numbered 12439 showing that they are the owners of said real estate as tenants by the entirety; and this defendant denies that she ever sold the said real estate to the plaintiffs, denies that she placed them into the possession of the said real estate, admits that the defendants are in the possession of said real estate, admits that she refuses to execute a deed conveying the said real estate to the plaintiffs, denies that the plaintiffs ever have paid her anything to apply upon the purpose [purchase] price of the said real estate."

By their reply to the answer of defendant, Carl Wilson, plaintiffs deny that defendant Carl Wilson informed them that the real property in question was owned by defendants as tenants by the entirety; deny that any conversation of any kind was held relative to obtaining the consent of the defendant, Rose Wilson, to the contract; deny that anything was said relative to refunding the down payment in the event that the defendant, Rose Wilson, refused to sign the deed or to approve the said contract; deny that there was any conversation relative to the payments of $15.00 per month being applied as rent under any conditions or circumstances; and deny all of the other allegations of the answer of said defendant, Carl Wilson, except

that the plaintiffs admit that the defendant, Rose Wilson, now refuses to execute a deed to the real property in question.

By their first further and separate reply to the answer of defendant, Carl Wilson, plaintiffs allege in effect that defendant, Carl Wilson, ought not to be permitted or allowed to claim or assert that the defendant, Rose Wilson, did not sell the said real estate to the plaintiffs or to deny that defendant, Rose Wilson, consented to placing defendants in possession of said real estate, or to deny that plaintiffs have paid the defendant, Rose Wilson, anything to apply upon the purchase price of said real estate by reason of the following facts and circumstances, to-wit:

"That the plaintiffs with the express knowledge of both of said defendants entered into the possession of the said real property on or about the 13th day of March, 1941, and have ever since that time occupied the said premises. That at the time of the entering into possession of said property the plaintiffs made a down payment of $200.00 and thereafter made monthly payments at the rate of $15.00 per month to the defendant, Carl Wilson. That the defendant, Rose Wilson, knew of each and all of said payments and was present at the time that many of the said payments were made."

"That after entering into the possession of the said premises aforesaid the plaintiffs made valuable and extensive improvements to the property by making additions to the residence and raising the roof of said residence and otherwise greatly improving said property. That the defendant, Carl Wilson, was well aware of the improvements as the same were being made; and he visited the premises during the time the said improvements were made and daily observed the premises as the said improvements were made, but made no objection thereto and fully acquiesced therein and encouraged

the belief and understanding by the said plaintiffs that the defendant, Rose Wilson, had agreed to sell the property to the plaintiffs and that said improvements were in and upon real property sold to the plaintiffs under the contract as aforesaid.

"That during all of the said time the aforesaid improvements were being made the defendant, Carl Wilson, never intimated in any way that the said defendant, Rose Wilson, was the owner of the said premises and all of his actions and remarks during this period encouraged the said plaintiffs to believe that they were the owners of the said real property and the buildings thereon purchased under the aforesaid contract and that the said defendant, Rose Wilson had agreed to sell the said property to the plaintiffs. That said improvements have required a large amount of work and labor by these plaintiffs and a large expenditure of money to construct and are in excess of the contract price. That all of said improvements were made and work and labor performed without any objection or claim whatsoever on the part of the defendants, and that the same was done with their full knowledge, consent, and acquiescence as aforesaid and with full knowledge on their part thereof and of all of their lawful rights in and to the lands aforesaid.

"That at no time prior to the completion of the said improvements nor for sometime thereafter did the defendant, Carl Wilson, advise the plaintiffs that the defendant, Rose Wilson, refused to sign the deed or approve of the contract for the sale of said property."

By their second, further and separate reply to the answer of defendant, Carl Wilson, plaintiffs allege:

"That the defendant, Carl Wilson, has been guilty of laches and unreasonable delay in asserting the facts set forth by him as defense to the complaint of the plaintiffs herein as follows:

"That the defendant, Carl Wilson, permitted the plaintiffs to enter into possession of the aforesaid

real property; that the defendant, Carl Wilson, consented to the making of valuable improvements on the aforesaid real property with full knowledge of the same during the whole of the time the said improvements were being made; and that at no time during the making of the said improvements nor for many months thereafter did the defendant, Carl Wilson, indicate in any way to these plaintiffs that the consent of the defendant, Rose Wilson, had not been obtained to the sale of the real property aforesaid. That during the whole of said period and up to the filing of the complaint by the plaintiffs herein, the defendant, Carl Wilson, continued to accept monthly payments for the property under the contract as aforesaid without at any time indicating to the plaintiffs that the defendant, Rose Wilson, had not agreed to the sale of the property to these defendants.''

For a first further and separate reply to the answer of defendant, Rose Wilson, in effect plaintiffs allege that defendant, Rose Wilson, ought not to be permitted or allowed to claim or assert that she did not sell the said real estate to the plaintiffs, or to deny that she placed plaintiffs in possession of said real estate, or to deny that plaintiffs have paid her anything to apply upon the purchase price of the said real estate by reason of the following facts and circumstances, to-wit:

''That the plaintiffs with the express knowledge of the said Rose Wilson entered into the possession of the said real property on or about the 13th day of March, 1941, and have ever since that time occupied the said premises. That at the time of entering into possession of said property the plaintiffs made a down payment of $200.00 and thereafter made monthly payments at the rate of $15.00 per month to the defendant, Carl Wilson. That the defendant, Rose Wilson, knew of each and all of said payments and was present at the time that many of the said payments were made.

"That after entering into the possession of the said premises aforesaid the plaintiffs made valuable and extensive improvements to the property by making additions to the residence and raising the roof of said residence and otherwise greatly improving said property. That the defendant, Rose Wilson, was well aware of the improvements as the same were being made; that she visited the premises during the time the said improvements were made and daily observed the premises as the said improvements were made, but made no objection thereto and fully acquiesced therein. By her conduct and conversation in regards thereto she encouraged the belief and understanding by the said plaintiffs that said improvements were in and upon real property sold to the plaintiffs under the contract as aforesaid. That during all of the said time the aforesaid improvements were being made the defendant, Rose Wilson, never intimated in any way that she was the owner of the said premises and all of her actions and remarks during this period encouraged the said plaintiffs to believe that they were the owners of the said real property and the buildings thereon purchased under the aforesaid contract. That said improvements have required a large amount of work and labor by these plaintiffs and a large expenditure of money to construct and are in excess of the contract price. That all of said improvements were made and work and labor performed without any objection or claim whatsoever on the part of the defendant, Rose Wilson, and that the same was done with her full knowledge, consent, and acquiescence as aforesaid and with full knowledge on her part thereof and of all of her lawful rights in and to the lands aforesaid."

And for their second further and separate reply to the answer of defendant, Rose Wilson, plaintiffs allege:

"That the defendant, Rose Wilson has been guilty of laches and unreasonable delay in asserting

that she never agreed to sell the property to the plaintiffs.

"That before asserting that she did not agree to sell the real property to the plaintiffs, she permitted the plaintiffs to enter upon the said real property, to make valuable improvements thereon, to live there for a period of many months without in any way indicating that she had not agreed to sell the property to these plaintiffs."

From the pleadings and the testimony, two issues are presented. One is whether the contract made by plaintiffs with defendants was an unconditional contract on the part of defendants, acting through defendant, Carl Wilson, to sell and transfer the property in suit to plaintiffs for the consideration of $1,000 payable as alleged in plaintiffs' complaint, or merely an agreement that defendant, Carl Wilson, would receive and hold the sum of $200 paid by plaintiffs until it could be ascertained whether defendant, Rose Wilson, would sign a deed of conveyance and in case she would not, then the $200 so paid by plaintiffs would be returned to them and the monthly installments of $15.00 and interest would thereupon be treated as rental for the use and occupancy by plaintiffs of the property involved.

The other question is whether the doctrine of estoppel should be applied thereby depriving defendants of asserting or claiming that the contract was other than as alleged by plaintiffs and also depriving defendants of the right to assert or claim the contract to be void or unenforcible, because it was not in writing and signed by the parties sought to be charged.

■ Upon the question first mentioned, while the oral testimony is conflicting, we think upon a consideration of the entire record, that plaintiffs have proven their

allegations as to the character of contract actually agreed upon by plaintiffs and defendants, bearing in mind however, that in making the contract defendants acted entirely by and through defendant Carl Wilson.

An extended discussion of the testimony would not serve any good purpose, but the writer thinks that he is justified in saying that the contract as alleged by plaintiffs is in accord with the usual and rational course ordinarily taken in reference to such transactions, while that which defendants allege is of a nature which few purchasers would entertain and if actually such a contract were made no prospective or conditional vendee thereunder would improve the premises as plaintiffs did in the instant case, until it had been definitely settled that the transfer would be made by both vendors. In other words, the agreement as alleged by defendants is not such an agreement as to induce or even invite the purchasers to expend money or effort in improvement of the property.

Moreover, in the reply which defendant, Rose Wilson, made to a letter of plaintiffs' attorney, Mr. Fort, wherein he asked why defendants were not keeping their agreement with plaintiffs, Mrs. Wilson made no claim that the agreement was as alleged in defendants' answers herein. Mrs. Wilson's letter is dated April 19, 1942; but Mr. Fort's letter, to which Mrs. Wilson's letter is a reply, is dated April 17, 1943, and we think that Mrs. Wilson's letter is misdated. The reason then assigned in her letter for refusing "to sign any papers" was that Mrs. Marshall was a trouble maker. Obviously, if Mrs. Wilson had understood that the only agreement made by her husband with plaintiffs expressly left it discretionary with her either to sign the deed and accept the consideration or to decline to sign

the deed in which event the only obligation upon her and her husband being to return the "down payment" of $200, she would have said so in her letter to Mr. Fort instead of assigning the reason stated; and she would not have offered to pay plaintiffs "for their improvement of the house", nor would she have said that "it would be worth that to get them out of the neighborhood".

When plaintiffs paid the sum of $200, Mr. Wilson gave a receipt therefor dated March 13, 1941, as follows: "Received of Bill Marshall 200.00 on place. Carl Wilson".

There is no suggestion that the amount received would be returned to Mr. Marshall if Mrs. Wilson declined to sign the deed.

Thereafter, thirty payments were made by Mr. Marshall for which Mr. Wilson gave receipts. Two of these receipts designated the payments as, "cash payment on place", sixteen of the receipts employed the words, "cash on place", three of them, "payment on place", one, "received payment on place" and eight, "on place". Not one of those receipts referred to the payment as rental, or to any condition or contingency which might arise causing such payment to be treated as rental.

To the writer, it is clear that the agreement actually entered into by plaintiffs and defendants was as alleged in plaintiffs' complaint.

■ In the absence of any showing of authority upon Mr. Wilson's part to make such an agreement for his wife as well as for himself, or any ratification thereof by Mrs. Wilson, she would not be bound by the terms thereof; but, as stated, plaintiffs invoke the doctrine of estoppel, and in effect ask the court not to permit

defendants to assert or claim that Mrs. Wilson is not bound to execute a deed to the premises in suit.

 This doctrine of equitable estoppel or estoppel *in pais* is that a person may be precluded by his act or conduct, or silence when it was his duty to speak, from asserting a right which he otherwise would have had. The one invoking such doctrine must show that he was entitled to rely upon such conduct, action or silence, that he acted thereupon and would be prejudiced if the doctrine of estoppel were not applied.

Speaking through Mr. Justice ROSSMAN, this court has said:

> "Fraud and estoppel *in pais* are alike in respect that each is dependent upon a representation. In fraud the representation is the foundation of the cause of action or of the defense; reliance upon it has inflicted an injury for which the party seeks redress or rescission. In estoppel, the representation, whether expressed directly in words or transmitted by any of the infinite methods by which a thought may be communicated from one to another, has made known the party's position in regard to a material fact; from this position he would like to retreat, but the representee desires to hold him to that position. The injury has not yet been inflicted but the party invoking the estoppel says that, unless the representor is prevented from shifting his attitude, an injury will occur to the representee. When all the elements of fraud are present a cause of action exists; all the elements of estoppel may be present and yet no cause of action exists because estoppel is not a cause of action. The function of estoppel is to preserve facts in favor of the representee." *Bramwell v. Rowland*, 123 Or. 33, 44, 261 P. 57; *Coquille Mill & Tug Co. v. Robert Dollar Co.*, 132 Or. 453, 473, 285 P. 244.

■ It is not seriously disputed that plaintiffs improved the property in suit to the extent of from $400 to $500 in value. While these improvements were being made, Mrs. Wilson assisted her husband and codefendant in operating his store and service station which was within 300 or 400 feet of the property in suit. Mrs. Wilson's mother was a next door neighbor on one side, her brother was a neighbor on the other side of plaintiffs while plaintiffs were occupying and improving the property in suit. The improvements consisted of planting shrubbery, making a lawn and adding a room on the second floor of the residence by raising the roof and extending the sides of the house. All of these improvements were plainly visible to Mrs. Wilson and there is nothing in the record indicating that she was not fully aware that plaintiffs were making them.

Defendant Rose Wilson, on redirect, testified that at the time when plaintiff William Marshall paid $200 upon the contract in suit, defendant, Carl Wilson, told her of his agreement with, and the payment so made by, Marshall.

Whatever the original contract may have been, Mrs. Wilson knew that there was a contract and must have known that, based upon that contract, plaintiffs were thus improving the property. To permit her to claim that she was not bound by that contract, when she knew or should have known that it was her duty to notify plaintiffs that they should not rely upon receiving a deed of conveyance from her, would certainly result to the prejudice of plaintiffs and to the unjust enrichment of defendants.

The testimony of a neighboring woman was given to the effect that sometime between the first of June and the middle of November, 1942, Mrs. Marshall told

her that Mrs. Wilson "didn't want her in that place but she was going to show her that they could stay there." The testimony of Mr. Marshall discloses that the improvements on the place were made in 1941.

Another neighboring woman testified that about the first of June, 1943, when Mrs. Marshall and the witness were getting on a bus that runs from Springfield to Eugene, Mrs. Marshall "kind of made a sneer and said, 'Of course, Mrs. Wilson never did want us on the property but we got on there and it is going to cost plenty to get us off.' "

Aside from the improbability that Mrs. Marshall would say such a thing at her first meeting with the witness, when it is borne in mind that the purported conversation is said to have occurred subsequent to the time Mrs. Wilson wrote the letter to Mr. Fort, wherein Mrs. Wilson carefully explained that she objected to Mrs. Marshall on the ground that she was a gossiper and a slanderer; but said nothing about the contract in suit containing a provision granting Mrs. Wilson the option to refuse to sign a deed, and likewise gave no intimation that Mrs. Wilson ever notified the Marshalls that she would not sign a deed to the premises in suit, the statements thus made are supported by that letter and in no wise disclose any notice by Mrs. Wilson to the Marshalls while the improvements were being made by them to the effect that she would not sign a deed conveying the property to them.

■ We cannot agree with defendants that any one of the elements of estoppel is lacking in the case at bar.

"To constitute estoppel by conduct there must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must

have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it." *Craswell v. Biggs,* 160 Or. 547, 568, 86 P. (2d) 71.

Clearly, there was a representation expressly made by Mr. Wilson to Mr. Marshall that there would be a sale of the premises in suit to plaintiffs and the only reasonable construction of such a representation is that by such sale a marketable title in fee would be transferred. We think that by remaining silent from the date of that representation, March 13, 1941, until her letter to Mr. Fort on April 19, 1942, knowing that $200.00 was paid when the contract was made and that $15.00 and interest monthly was being paid by plaintiffs; that plaintiffs were in possession of the premises; that plaintiffs were making comparatively valuable improvements thereon, defendant, Rose Wilson, represented to plaintiffs that a marketable title would be transferred to them when the agreed consideration had been paid. So much for the first named element of estoppel.

As to the second element thereof, we can come to no other conclusion than that at all times Mrs. Wilson knew the fact that she would not willingly enable plaintiffs to obtain such title. Just when that fact became known to Mr. Wilson is not clear, but certainly he must have known it within a short time after the contract of sale was made, for in his answer he says that Mrs. Wilson "always disapproved of the said verbal contract".

The third element, namely, that from the time the contract was made until Mr. Fort received Mrs. Wilson's letter, Mr. and Mrs. Marshall were ignorant of the truth, which is so clearly demonstrated now,

namely, that Mrs. Wilson would not transfer her interest to plaintiffs, is apparent from the expenditure of labor and money in making permanent improvements upon the premises.

The fourth element, being that the representation that a marketable title would be transferred to plaintiffs, was acted upon by plaintiffs, is shown beyond any doubt.

The fifth element is equally obvious, namely, that by means of the representation above stated, plaintiffs were induced to pay the installments upon the purchase price, and to make the improvements as stated.

■ It is argued that plaintiffs were negligent in not making inquiry of Rose Wilson as to her intentions, before buying the property, or making any of the improvements thereon. The writer thinks that such course was not required under the facts as disclosed by this record; and, if it had been taken, probably would have been construed as an unjustified reflection upon the domestic affairs of defendants and also upon the probity of defendant Carl Wilson.

Mr. Marshall's testimony discloses that for a year he repeatedly importuned Mr. Wilson seeking to know when a formal contract would be executed and after the lapse of approximately a year Mr. Wilson said in effect that he thought that they should forego the execution of a contract and simply have a deed drawn and executed conveying the premises to plaintiffs and a mortgage securing the unpaid portion of the purchase price. We also bear in mind that pursuant to such suggestion, Mr. Wilson had Mr. DePue prepare a warranty deed naming defendants as grantors and plaintiffs as grantees conveying the premises in suit to plaintiffs; and at that time, at Mr. Wilson's instance, Mr. DePue also prepared a mortgage upon the premises

securing the payment of the unpaid portion of the purchase price, which, at Mr. Wilson's instance, defendants executed, in which mortgage both plaintiffs were named as mortgagees.

The deed was not executed. The mortgage bears the date of May 28, 1942.

Upon oral argument, the attorney for defendants suggested that a lien might be impressed upon the property in suit for the value of the improvements made by plaintiffs less the rental value of the premises since payments by plaintiffs ceased.

There is nothing in the pleadings or proof which would support such a decree. In fact, defendants' answers and their testimony are entirely inconsistent therewith.

The judgment and decree of the circuit court is hereby modified in three respects, namely:

1. To require both defendants, Carl Wilson and Rose Wilson, his wife, to convey the premises in suit to plaintiffs by a good and sufficient deed within thirty days after the receipt by the circuit court of the mandate herein;

2. By ordering, adjudging and decreeing that in the event of the neglect, failure or refusal of said defendants or either of them to execute such deed within the time herein prescribed, then the said decree as hereby modified shall have the same effect and operation as such deed would have had if duly executed; and

3. By deleting from said decree of the circuit court the order of dismissal therein as to defendant Rose Wilson.

As thus modified in the three respects above set forth, the judgment and decree of the circuit court is affirmed.