Argued and submitted June 1; resubmitted In Banc August 8, affirmed
November 23, 1994, petition for review denied January 24, 1995 (320 Or 507)

# In the Matter of the Marriage of

## Jesse Richard DeCAIR, Jr.,
### *Respondent,*
### *and*

## Dolores Isabell DeCAIR,
### *Appellant.*

## (119,141; CA A81632)

885 P2d 736

In Banc*

Norman F. Webb argued the cause for appellant. With him on the brief was Webb & Martinis.

Bruce W. Williams argued the cause and filed the brief for respondent.

DEITS, J.

Edmonds, J., dissenting.

* Warren, J., not participating.

## DEITS, J.

Wife appeals from a judgment for husband for $14,812, which represents the amount owed on an expired judgment in favor of husband. She assigns error to the trial court's determination that, before the judgment expired, an oral agreement was made between husband and wife to pay the total amount of the judgment and that husband's part performance of that agreement avoids the effect of the statute of frauds, making the agreement enforceable. ORS 41.580. We affirm.

This case arises out of a dissolution judgment that was entered on June 18, 1982. That judgment awarded wife the family home, subject to a lien held by husband in the amount of $15,000 plus interest at 10 percent per year to be paid within five years from the date of the dissolution judgment or when the house was sold, whichever occurred first. Over the next five years, wife made no payments to husband, nor did she sell the house. In August, 1987, the parties met to discuss the situation. Husband testified that he promised not to foreclose the lien in exchange for wife's agreement to make an initial payment of $3,000 and monthly payments of $500 thereafter until the amount of the judgment was paid in full.

After paying the $3,000 and two $500 payments, wife told husband that she could not afford monthly payments in that amount. Husband then agreed to accept not less than $125 per month under the agreement. That amount was equal to the amount of interest accruing on the judgment. From November, 1987, until June, 1992, wife made monthly payments to husband in amounts that ranged from $125 to $300. Wife terminated the payments when she determined that husband had failed to renew the judgment and that, as a consequence, the judgment had expired. ORS 18.360(1); ORS 107.126(1).[1]

---

[1] ORS 18.360(1) provides:

"Whenever, after the entry of a judgment, a period of 10 years elapses, the judgment and any docketed or recorded lien thereof shall expire. However, before the expiration of 10 years the circuit or district court for the county in which the judgment originally was entered, on motion, may renew the judgment and cause a notation in the register and the judgment docket indicating the renewal of the judgment to be made. The renewed judgment and any lien thereof expire 10 years after entry of the renewed judgment. If the judgment is renewed, the judgment creditor or the agent of the judgment creditor, may cause to be

Thereafter, husband filed in the dissolution proceeding a "petition for supplemental relief." In his petition, he sought to invoke the equitable jurisdiction of the court by requesting that the court order the property sold and that he be paid from the proceeds the amount that wife owed him or, alternatively, that he be awarded a judgment in that amount. Wife filed a response denying that husband was entitled to relief and alleging that, because the judgment had expired, the obligation imposed by it was no longer viable. Husband replied, alleging that wife should be estopped from claiming that the judgment was unenforceable and that wife would be unjustly enriched if she is able to avoid her obligation. Following trial, the court entered judgment for husband for the amount owed,[2] ruling, in part, that:

"4. There was an oral contract entered into between the parties and [wife] agreed to pay on the $15,000 provision in the divorce decree until it was paid in full.

"5. There was sufficient partial performance by the parties to make the contract enforceable.

"6. [Wife] should be estopped from asserting her defense that the judgment was not renewed as such would constitute unjust enrichment."

Wife assigns each of those rulings as error.[3] We review *de novo*.[4] ORS 19.125(3).

---

recorded in the County Clerk Lien Record of any other county in this state a certified copy of the renewed judgment or a lien record abstract. Execution may issue upon the renewed judgment until the judgment expires or is fully satisfied."

ORS 18.360 was amended by Oregon Laws 1993, chapter 716, section 1, and Oregon Laws 1993, chapter 763, section 6. Those amendments are not at issue in this case.

ORS 107.126(1) provides:

"Except as otherwise provided in ORS 18.360(2), no order, judgment or decree for the future payment of money in gross or in installments, entered under ORS 107.095 or 107.105, shall continue to be a lien on real property for a period of more than 10 years from the date of docketing of such order, judgment or decree unless it is renewed as provided in ORS 18.360(1)."

[2] A court acting in equity may award damages in lieu of equitable relief. *See, e.g., Frankland v. City of Lake Oswego*, 267 Or 452, 517 P2d 1042 (1973).

[3] Because of our disposition of the first two issues, we need not address the third.

[4] Before trial, wife argued that husband's claims were for monetary damage rather than equitable relief and, therefore, she was entitled to a jury trial. The trial

On appeal, wife first argues that she and husband did not enter into an oral agreement in 1987. In her brief to this court, she says:

"The facts in the record are inadequate to support the existence of an agreement or contract between the parties herein for the payment of the $15,000.00 provision in the divorce decree. * * * Mere discussions between two parties do not produce a contractual relationship unless those discussions result in a meeting of the minds on all essential terms. Thus, conversations between a debtor and creditor regarding payment of an existing debt do not, without more, amount to an enforceable contract between the parties." (Citations omitted.)

According to wife, the payments that she made to husband were pursuant to the divorce decree, and were not based on any separate agreement with husband.

At the hearing, husband testified that he understood that he

"was entitled to force the payment [of the judgment] to [sic] a legal process and I suggested to her that she pay off the lien from cash reserves, take out a second mortgage and pay off the lien or sell the house and pay off the lien. She indicated to me if there was any way possible, she didn't want to sell the house, that she couldn't pay the $15,000 plus the $7,500 accrued interest, and so in lieu of bringing the issue of her selling the house to satisfy the lien, the judgment, we entered into a verbal agreement that included her making substantial and regular periodic payments to me until the total judgment was satisfied."

■■ Only husband and wife testified at the trial. Because the trial court had the opportunity to see and hear the witnesses as they testified, we will give considerable weight to that court's findings when the testimony, or the inferences to be drawn from it, are in dispute. *Seitz v. Albina Human Resources Center*, 100 Or App 665, 674, 788 P2d 1004 (1990). In order to reach the result that it did, the trial court must have believed husband's testimony on the issue of whether an

---

court, noting that the petition was filed as part of the parties' dissolution and that the requested relief was equitable, denied wife's request. Wife does not assign that ruling as error and, on appeal, she asserts that our standard of review is *de novo*. We accept her assertion without necessarily approving the propriety of the filing of this proceeding as part of the dissolution proceeding.

oral agreement was made in 1987. Moreover, at the end of the five-year period, there was no existing agreement or court order for the payment of the judgment on an installment basis. Thereafter, the parties embarked on a course of conduct that supports husband's testimony and that demonstrates an agreement that husband would not force the sale of wife's house in exchange for wife's installment payments on the judgment amount. We agree with the trial court on this issue.

■ Wife also contends that there was no consideration to support an oral agreement. As of June 19, 1987, husband had the right to enforce the lien and require the house to be sold. Husband's continued forbearance of the exercise of that right after that date constitutes consideration for the agreement. See *Reid-Strutt, Inc. v. Wagner*, 65 Or App 475, 479, 671 P2d 724 (1983). Accordingly, we reject wife's argument about lack of consideration.

■ Wife next argues that, even if there was an oral agreement, it was not enforceable because she agreed only to pay a sum that she was already legally obligated to pay. In his complaint, husband alleged that the oral agreement was for wife to make monthly payments "until the lien amount was paid in full." At the hearing, he testified that

"in lieu of forcing the issue of her selling the house to satisfy the lien, the judgment, we entered into a verbal agreement that included her making substantial and regular payments to me until the *total judgment* was satisfied.

"* * * * *

"It was my understanding that I would do nothing to force the issue because it was a *separate contract* between [wife] and myself." (Emphasis supplied.)

Husband also testified that he was unaware that the judgment would expire after 10 years or that he could renew the judgment, and that those issues were not discussed at the time that he and wife entered the agreement. Wife testified that she told husband, "I'll pay you as long as I owe it to you." When asked by husband's counsel what that meant, the following exchange took place:

"[Wife] Well, I would make him payments on the judgment until the judgment—well, if he didn't renew it.

"Q   You claim he only owed you money as long as he had the judgment?

"A   He knew about it.

"Q   It was your idea you only owed him the money until the judgment was renewed?

"A   I had all intentions that he would renew it. [Husband] is very efficient."

After hearing the testimony of the two witnesses, the trial court found that wife "agreed to pay on the $15,000 provision in the divorce decree until it was paid in full." Because the testimony is in direct conflict and we have no independent basis for judging the credibility of either witness, we give considerable weight to the trial court's finding of fact on the issue of the parties' intent. We find, as did the trial court, that wife agreed to make payments on the amount in the dissolution judgment until that amount was paid in full. As such, her obligation was distinct from the obligation imposed by the judgment and was unaffected by the expiration of that judgment.[5]

---

[5] The dissent concludes that husband's own testimony is contrary to the trial court's finding that the agreement created a new obligation and that husband viewed the judgment lien as the underlying obligation. We disagree with that argument for two reasons. First, as quoted above, husband testified that he considered the agreement to be a "separate contract" from the judgment. Second, and more importantly, the dissent reaches its conclusion only by placing undue emphasis on husband's use of the words "judgment" and "lien" in his testimony. Husband did make repeated references to wife "paying the judgment" and "satisfying the lien"; however, in the light of husband's pleadings that wife would make payments until the "lien amount was paid in full," we read his testimony as referring to the *amount* of the judgment or lien. As wife readily admits, "[a]n agreement to pay a debt in full involves a new promise, as the promise is affirming that payment will be made even if the judgment expires and the debt is no longer owed."

The dissent unfairly assumes, without any evidence to support the assumption, that a lay person such as husband understood the legal ramifications of the term "judgment" and used the term specifically *because* of what that term means. It is undisputed that the *origin* of the debt was the judgment; thus, we would expect that the parties' testimony about the separate oral agreement would include references to the terms used in the judgment. Those references, however, do not necessarily establish that the judgment was the obligation underlying the oral agreement. The distinction between "paying on a judgment" and "paying the total amount of a judgment" is a technical one that could easily escape recognition, even by those familiar with the often precise application of legal terminology. By holding husband responsible for such a subtle distinction, the dissent would reach an unreasonable and inequitable result.

■ Finally, wife argues that, even if there was an oral agreement creating a new obligation on her part, that agreement was unenforceable because it failed to comply with the statute of frauds. ORS 41.580 provides, in part:

"(1)   In the following cases the agreement is void unless it * * * is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"(a)   An agreement that by its terms is not to be performed within a year from the making."

Husband does not contest that the agreement could not have been performed within a year; however, he argues, and the trial court found, that the agreement was enforceable because the parties had partially performed their obligations under the agreement. The doctrine of part performance provides that

" 'the terms of an oral agreement will be enforced (1) if there is conduct corroborating and unequivocally referable to the oral agreement sufficient to satisfy the policy of the statute designed to minimize perjured claims and the opportunities for fraud, and (2) if there are equitable grounds for enforcing the contract whether those grounds are found in facts establishing the basis for a true estoppel *or in facts justifying the avoidance of unjust enrichment* or relief from fraud.' " *Stevens v. Good Samaritan Hosp.*, 264 Or 200, 207, 504 P2d 749 (1972) (quoting *Luckey v. Deatsman*, 217 Or 628, 633, 343 P2d 723 (1959)). (Emphasis supplied.)

As to the first requirement, here, wife made 59 monthly payments to husband, and husband did not exercise his right to foreclose. Neither party disputes that husband knew that he was entitled to full payment of the amount of the judgment and that husband expressed interest in receiving that payment. In view of those facts, as well as wife's acknowledgement that she was not required to make monthly payments under the terms of the dissolution judgment, wife's payments and husband's forbearance were unequivocally referable to the oral agreement. Additionally, equitable grounds exist to justify the enforcement of the oral agreement. *See Martin v. Allbritton*, 124 Or App 345, 351, 862 P2d 569 (1993). As of August, 1987, husband was entitled to

exercise his right under the judgment to foreclose on the property. In contrast to what often occurs in dissolution cases, husband was willing to forego his right to an immediate satisfaction of the lien so that wife would not lose the home. To penalize husband for this action would be inequitable and would result in wife's unjust enrichment.

Affirmed.

**EDMONDS, J.,** dissenting.

*What really happened:*

Under a 1982 dissolution judgment, husband received the right to payment of $15,000 plus interest from wife. The judgment gave five years for wife to pay the judgment. After the five-year period expired, wife expressed her inability to pay the full amount in one payment, and the parties entered into an agreement regarding how wife would pay the obligation due under the judgment. The only terms of that agreement were that husband would forbear from taking any legal action on the judgment, as long as wife continued to pay on the judgment debt by monthly installments. Thus, in the event wife breached the agreement, husband's recourse was to enforce the judgment. When the judgment expired, husband could no longer enforce the underlying obligation by operation of law.

*What the majority says happened:*

In order to hold for husband, the majority finds that the parties created a *new* obligation arising out of the 1987 discussions that is necessarily *in addition to* or *in substitution of* the obligation expressed by the judgment. According to the majority, it is the new obligation that survived the expiration of the judgment and the debt that it reflected. But did the parties do what the majority says that they did?

This matter commenced with the filing by husband of a "petition for supplemental relief." In his first claim in the petition, husband alleges that the real property awarded to wife as a result of a 1982 dissolution decree is subject to a judgment lien. After giving wife credit for payments made, he alleges that there is owing under the judgment the sum of $14,812, and he requests that the court foreclose the lien by ordering the property sold, and that he be paid the sums owed

him from the proceeds of the sale. Obviously, husband cannot prevail on his first claim because the judgment lien expired in June, 1992.

In his second claim in the petition, he realleges the facts of the first claim and then alleges:

"7.

"Parties entered into an oral agreement on or about August, 1987, whereby [wife] was to pay the sum of $3,000 in August of 1987, and $500.00 monthly payments thereafter until said lien amount was paid in full, *in consideration of [husband] not instituting legal proceedings to collect the lien herein referred to.* [Wife] made payments until June 18, 1992, when she refused to make further payments. There is now due and owing the sum of $14,812.28." (Emphasis supplied.)

As alternative relief, husband requested that he be awarded a judgment against wife for the principal amount of the unpaid judgment with accrued interest, costs and attorney fees.

In the answer to the petition, wife denies that there was an agreement in 1987, alleges that husband had failed to renew the "judgment," and that the alleged "oral agreement" was in violation of the Statute of Frauds. In reply to the answer, husband alleges:

"1.

"[I]n consideration of [husband] *not undertaking legal action to compel sale of the subject property,* nor to file a partition suit, nor to undertake modification of the Decree, *nor to file any proceedings to enforce payment of a judgment,* [wife] did make payments to [husband] on principal and past due and accrued interest.

"2.

"[Husband] relied on the representations of [wife] and *did not undertake collection and/or enforcement procedures;* and thereby suffered damages alleged." (Emphasis supplied.)

It is apparent from the pleadings, that the *only* obligation in issue is the one reflected by the judgment and that the disagreement between the parties centers on whether there was an agreement in 1987 about how that obligation would be satisfied. At the hearing on the petition,

there was no contention by either party that a *new* debt had been created in 1987. Rather, husband contended that he argued to forbear from executing on the judgment and relied to his detriment on wife's promise to make payments on the original debt—a debt that arose solely from the judgment.

On direct examination, he testified:

"Q   Now, after the period of June 18, 1982, did you have certain conversations with Ms. DeCair about the unpaid balance?

"A   Yes.

"Q   And generally did that preface the payments after the five years?

"A   In one form or another.

"Q   How do you mean that?

"A   Well, it was my understanding that I was entitled to force the payment to a legal process and I suggested to her that she pay off the lien from cash reserves, take out a second mortgage and pay off the lien or sell the house and pay off the lien. She indicated to me if there was any way possible, she didn't want to sell the house, that she couldn't pay the $15,000 plus the $7,500 accrued interest, and so *in lieu of forcing the issue of her selling the house to satisfy the lien, the judgment, we entered into a verbal agreement that included her making substantial and regular periodic payments to me until the total judgment was satisfied.*

"Q   The total judgment, would that include both the principal and interest?

"A   Yes.

"* * * * *

"Q   Now, did you at that particular time agree not to petition the Court that the property be sold or bring any independent proceeding to collect the judgment?

"* * * * *

"A   It was my understanding that I would do nothing to force the issue because it was a separate contract between Dolores and myself.

"Q   You did not undertake any type of collection proceedings during that period of time except—*at any time so long as you received the payments*?

"A   That's correct." (Emphasis supplied.)

On cross-examination, husband testified:

"Q Okay. You didn't have any conversation with Dolores DeCair about renewing or not renewing the judgment, did you, at that time?

"A Only after the fact.

"Q Okay. In 1992, after June 18, 1992?

"A Yes.

"* * * * *

"Q And you did not know the fact there was a statute, 18.360, that said you had to renew the judgment after 10 years elapsed?

"A Not at the time.

"* * * * *

"Q And there was nothing, as I see in any of your letters that you wrote to Dolores DeCair, that said anything about the judgment expiring or the fact that you would not renew it or would not have to renew it, is that true?

"A I made no allegations or reference to that nature.

"* * * * *

"Q You are saying the agreement was that she pay $500 a month till the judgment was paid?

"A That was her offer to me, and *I accepted that in lieu of proceeding on the foreclosure and disposition of the property. That was to satisfy the lien. It was clearly understood between the two of us that I would not pursue any other collection efforts.*

"* * * * *

"Q Are you suggesting that you gave up your right to foreclose in consideration for this agreement, is that your position?

"A Very much so, yes.

"Q I want you to look at the letter you wrote in August of '87; do you have it in front of you?

"A Yes.

"* * * * *

"Q And when you say 'satisfy the lien,' you are talking about your lien, are you not?

"A Yes.

"Q  *And when you say 'force the sale,' you mean that is a sale of the home property, that you would sell it; is that right?*

"A  *If she defaults.*" (Emphasis supplied.)

After husband finished testifying, wife testified that their agreement was that she would "make the payments till I no longer owed the money." She agreed that no discussion occurred in 1987 about renewing the judgment, that she assumed that husband would renew the judgment, and that she would continue to owe on it. When he did not renew the judgment, she stopped payments because the obligation under the judgment was no longer legally enforceable. There was no testimony that either party intended that a new debt be created apart from the debt reflected by the original judgment.

The trial court took the matter under advisement. It rendered a letter opinion which reads in part:

"If it was necessary to docket the judgment or the lien, and I am not sure it was, I find that there was an oral contract entered into between the parties and the Respondent agreed to pay on the $15,000 provision in the divorce decree until it was paid in full. If it is necessary in this case to find partial performance under an oral contract to avoid the statute of frauds, I am satisfied that there was such partial performance in this case and that the oral agreement that was made should and ought to be enforced because of the equitable grounds for enforcing the contract and that the Respondent ought to be estopped from asserting such a defense which would constitute an unjust enrichment."

The majority says:

"The dissent concludes that husband's own testimony is contrary to the trial court's finding that the agreement created a new obligation and that husband viewed the judgment lien as the underlying obligation. We disagree with that argument for two reasons. First, as quoted above, husband testified that he considered the agreement to be a 'separate contract' from the judgment. Second, and more importantly, the dissent reaches its conclusion only by placing undue emphasis on husband's use of the words 'judgment' and 'lien' in his testimony. Husband did make repeated references to wife 'paying the judgment' and 'satisfying the lien'; however, in the light of husband's pleadings that wife would make payments until the 'lien amount was paid in full,' we

read his testimony as referring to the *amount* of the judgment or lien." 131 Or App at 419 n 5. (Emphasis in original.)

If the trial court means that the oral contract entered into created a new obligation, separate or in lieu of the judgment, it's analysis, like the majority's, is not supported by the evidentiary record. First, there is no evidence of such an agreement; if there was, wife would be responsible for two obligations between 1987 and 1992 — one under the judgment and a discrete obligation under the "separate contract." Nor is there any consideration for such an agreement. Second, there is nothing in the pleadings or the evidence to suggest that the parties intended to create a novation or substitute obligation in 1987. Moreover, the majority's theory that the parties intended to create a new obligation makes no sense when an unpaid obligation, secured by a judgment lien, already existed.

The majority can hang its hat only on the statement by husband that the 1987 agreement "was a separate contract between [wife] and myself." However, that statement is made in response to a question from counsel about whether husband had "agreed not to petition the Court that the property be sold to bring any independent proceeding to *collect the judgment*." (Emphasis supplied.) The "separate contract" refers to husband's agreement not to pursue collection efforts on the judgment. After 1987, in exchange for payment to be made by wife on the judgment, there is no suggestion in any of the testimony that the parties believed they were creating an additional obligation or a novation, that could be enforced independently of the judgment. In 1987, the parties made an agreement, but it was not an agreement to create a new obligation.

This case is resolved by operation of law. In *Hovden and Hovden*, 104 Or App 514, 802 P2d 89 (1990), we said that ORS 18.360 defines a period during which a judgment and its lien exist, and if the ten-year period for renewal of the judgment has expired, the obligation reflected by the judgment expires also. 104 Or App at 517. Husband cannot recover on an expired obligation, and the trial court erred when it held to the contrary. In that light, husband bases his claim on an obligation that was legally not in existence after

1992, and no sleight of hand — rabbit in the hat — trick by the majority can make it viable again.

The trial court also accepted the argument that wife is estopped from asserting a defense that the judgment is unenforceable. Equitable estoppel is a doctrine by which a person may be precluded by his conduct or silence from asserting a right which he otherwise would have had. *Marshall v. Wilson*, 175 Or 506, 518, 154 P2d 547 (1945). It is not a theory of liability which, in itself, is the basis for a claim. *Gillman v. Emel*, 89 Or App 153, 156, 747 P2d 390 (1987). In other words, the doctrine cannot be used to create a new obligation between the parties unless there is otherwise the components of a contractual relationship, but it can be used only to preclude wife from asserting her rights under the original judgment. The elements of equitable estoppel are: (1) a false representation; (2) made knowingly or with knowledge of the true facts; (3) at a time when the plaintiff is ignorant of the truth; (4) made with the intent that it be relied or acted on; and (5) reliance on the false representation by the injured party. *Earls et ux v. Clarke et al*, 223 Or 527, 530-31, 355 P2d 213 (1960).

Wife argues that she did not make any false representations that resulted in husband not renewing the judgment. The record resoundingly supports her argument. There is no evidence that the consideration of the need to renew the judgment was part of the bargain between the parties in 1987. In May, 1992, husband told wife that he would be gone for several months and asked if she intended to make payments on the judgment in his absence. She said that she would continue to make payments on the judgment "so long as she owed the same." When husband returned from his trip in July or early August, 1992, he learned that no further payments had been made. When he telephoned wife about her failure to make the payments, she informed him that the judgment had expired. These facts do not amount to an estoppel. There is no persuasive evidence that husband relied to his detriment on a false representation by wife that resulted in his failure to renew the judgment.[1] Moreover,

---

[1] The majority implies that husband was not sophisticated enough to understand the legal impact of the word "judgment." *See* 131 Or App at 419 n 5. Husband was formerly an assessor for Marion County.

even if equitable relief were available, equity aids the vigilant, not those who sleep on their rights. It should not relieve husband from the consequences of his own neglect in not renewing the judgment.[2] *Churchill v. Meade,* 92 Or 626, 637, 182 P 368 (1919).

In summary, the majority's interpretation of the record in this case is unsupported by the pleadings or the evidence. The majority simply has fashioned what it perceives to be an equitable remedy out of its sympathy for husband's predicament and has made an agreement for the parties that they did not contemplate. In doing so, it abrogates its responsibility to decide this case based on the facts in the record and the applicable law. When husband failed to renew his judgment, the parties' 1987 agreement expired as did the debt owed by wife to husband. The "rabbit" (the obligation reflected by the judgment) died in 1992, and the majority is "dead" wrong when it attempts to resurrect it.

I dissent.

Richardson, C. J., and Landau, J., join in this dissent.

---

[2] In *Shiel v. Breuer,* 130 Or App 87, 880 P2d 500 (1994), we held that the husband's failure to renew a judgment lien against the wife left him with no equitable remedy, despite the fact that the result allowed the wife to keep the entire value of the home. "The judgment lien lapsed because of husband's neglect; thus, any enrichment of defendants does not rise to the level of 'unjust.' " 130 Or App at 92. Apparently, the majority has a more sympathetic view of husband's plight.